ELLIS, C. J., MORRIS, MAIN, and WEBSTER, JJ., concur.

---

[No. 13789. Department One. March 26, 1917.]

MORRIS & COMPANY, *Respondent*, v. CANADIAN BANK OF COMMERCE, *Appellant*, HARRY W. BELKIN *et al.*, *Defendants*.[1]

GARNISHMENT—PROPERTY SUBJECT—DEPOSITS—PROCEEDS OF DRAFT —TITLE OF DEFENDANT. Where plaintiff had a contract whereby it sold beef upon commissions for and on account of the defendants, who were butchers, which defendants violated by failing to pay freight or commissions, and a consignment of beef was sent to plaintiff with a draft for the purchase price, made out to and indorsed by third parties, who were cattle buyers having dealings with the defendants, the plaintiff, upon paying the draft and depositing the money in the bank holding the draft for collection, in order to garnishee the money, must establish that it was the money of the defendants; and if it was not the defendants' money, the relation of the bank to the indorsers of the draft, and whether the indorsement of the draft or the title to the money was absolute or conditional becomes of no concern.

SAME—PROPERTY SUBJECT—TITLE OF DEFENDANT—EVIDENCE—SUFFICIENCY. In such a case, a finding that the dealers in the cattle, who indorsed the draft, were agents of the defendants acting as a screen for defendants, who at all times owned the commodity shipped, is not warranted, where there was no proof of agency or evidence of fraud, and it appeared that the indorsers, from time to time, sold cattle to the defendants, taking drafts with bill of lading to be credited on the account, and it was not shown that a debt was

[1]Reported in 163 Pac. 1139.

not thereby incurred or that any part of the drafts so made were paid to the defendants, who appeared to be financially embarrassed.

EVIDENCE—JUDICIAL NOTICE — TRADE CUSTOMS.  The courts will take judicial notice of the habit of financing the movements of goods so as to protect the purchase price through the mediumship of drafts and bills of lading by those of limited credit.

GARNISHMENT—NATURE OF REMEDY.  The remedy by garnishment in this country is purely statutory, and under our statutes a garnishment is an adversary proceeding amounting to an action by the defendant against the garnishee for the use of the plaintiff.

APPEAL — DECISIONS APPEALABLE — FINAL ORDERS — JUDGMENT AGAINST GARNISHEE.  A judgment in garnishment proceedings that the money or property in possession is the money or property of the garnishee, is a final judgment, within the meaning of Rem. Code, § 1718, authorizing appeals from final judgments at any time within ninety days, and hence appeal need not be taken within fifteen days after entry of the order; in view of the fact that execution may issue immediately, that the money must be paid to the clerk and held *pendente lite*, to be paid to the defendant in case judgment goes against the garnishee, as provided by Id., § 694.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 22, 1916, upon findings in favor of the plaintiff, in garnishment proceedings, tried to the court.  Reversed.

*Bronson, Robinson & Jones*, for appellant.

*Fred W. Catlett* and *Emmons & Emmons*, for respondent.

CHADWICK, J.—Plaintiff, a corporation doing business at Seattle, brought this action against the defendants, alleging:

"That heretofore and within three years last past, plaintiff entered into a contract with the firm of Belkin-Lukatsky & Jameson, relative to the sale of beef by plaintiff for and on account of said firm, by which said firm was to ship beef to the city of Seattle or elsewhere, and plaintiff was to sell and dispose of the same.  Belkin, Lukatsky & Jameson were to pay the freight on the beef, and plaintiff was to receive a commission of six per cent on the selling price thereof; that thereafter said firm shipped several carloads of beef and plaintiff disposed of the same, but in violation of their contract said firm did not prepay the freight, nor has said firm

paid any of the commission thereon due plaintiff, though plaintiff has demanded the same; that there is now due and owing plaintiff for said commissions and freight paid the sum of sixteen hundred dollars.

"That said firm of Wade and Jack act as agents of the firm of Belkin, Lukatsky and Jameson, and that the drafts are drawn in the name of said agents, Wade and Jack, but the proceeds thereof belong to said Belkin, Lukatsky & Jameson, and the said Wade & Jack hold them for their benefit, and are made parties to this action because claiming some interest in the funds to be seized."

The testimony shows by an overwhelming preponderance, if not indisputably, that the firm of Wade & Jack, formerly Wade, Wilson & Jack, is a copartnership engaged in the business of selling cattle and other live stock, at Calgary, Alberta; that Belkin, Lukatsky & Jameson are engaged in the business of butchering and selling dressed beef; that Wade & Jack sold cattle from time to time to defendants on a week to ten-day credit; that the cattle were butchered and the meat, not disposed of locally, put in cars for shipment consigned to a customer against whom the packer drew a draft for the value of the shipment which, with bill of lading attached, was indorsed over to Wade & Jack; that Wade & Jack were customers, carrying a checking account in the Calgary branch of the garnishee bank; that, upon receipt of the draft by Wade & Jack, it was deposited and credit given their general account for the amount of the draft, less a small discount or exchange; that the bank would then, as was done in this case, send the draft as a cash item to its correspondent bank; that, when the draft had been paid and the bill of lading delivered, the collecting bank would remit by check or exchange, or if, as in the case at bar, the collecting bank was a branch of the same parent institution, the proceeds would be passed to the credit of the remitting bank with notice of the collection and credit.

Defendants had, prior to December 12, 1914, consigned several carloads of dressed beef to plaintiff at Seattle, against

which drafts were drawn payable to Wade & Jack, or Wade, Wilson & Jack, all of which were paid. A shipment was made on December 12. A draft for $2,205.50 was drawn in favor of Wade & Jack. This was indorsed by them and deposited at the bank in Calgary. The proceeds were passed to the open checking account of Wade & Jack, the bank assuming ownership of the draft subject to a right and custom prevailing in its dealings with its customers to charge back the amount of the deposit or, at its option, to dispose of the bill of lading for its own account if the draft went to protest or was not paid by the consignee.

Plaintiff had, evidently in anticipation of the arrival of the car, prepared the complaint in the main action, the material parts of which are hereinbefore set out; for, upon the presentation of the draft, it paid the full amount thereof and immediately caused a writ of garnishment to be served on the garnishee. The garnishee answered, denying that it had "any property or effects of any kind or nature whatsoever belonging to said defendants or either of them." This answer was controverted by affidavit of plaintiff in the nature of a general denial. Upon the trial, the facts appeared as we have detailed them. The manager of the Calgary branch was a witness. He testified, in part, that Belkin, Lukatsky & Jameson were not customers of his bank; that he had some general knowledge of their financial standing, and in answer to the question: "Do you recall Mr. Jameson speaking to you about passing drafts through Wade, Wilson & Jack's account as his firm was in financial difficulties?" said: "I was aware they were not strong financially, and would not be surprised if he [Jameson] had made outside arrangements to assist him in financing, etc."

These are all the material facts. In the main case, the court found, *inter alia:*

"That the firm of Wade, Wilson & Jack acted as agents for the firm of Belkin, Lukatsky & Jameson, because said firm of Belkin, Lukatsky & Jameson had no banking credit and

for that reason the drafts drawn by said firm of Belkin, Lukatsky & Jameson were drawn in the names of these agents, Wade, Wilson & Jack, or after the withdrawal of John Archibald Wilson, as Wade & Jack; that said firm of Wade, Wilson & Jack was merely a screen for the defendants, Belkin, Lukatsky & Jameson, and that at all times the drafts drawn by Belkin, Lukatsky & Jameson for the cars of beef shipped in accordance with the contract were the property of Belkin, Lukatsky & Jameson."

Counsel challenges the garnishee's title to the money. They raise many legal questions. But the primal fact upon which plaintiff's right to recovery depends—that is, that defendants had some interest or ownership in the fund sought to be sequestered, or that Wade & Jack were acting for the former firm and manipulating the fund through their own account, without consideration and for the sole use and benefit of defendants—must be established before the title of the bank becomes material. If the money does not belong to defendants, the relation of the bank to Wade & Jack, the question whether the indorsement of the draft was absolute or provisional, and whether title to the money was absolute or conditional, can be of no possible concern to plaintiff.

We find no evidence to sustain the allegation that Wade & Jack were agents of defendants, or the finding of the court that Wade & Jack were acting as a screen for defendants, or that the commodity shipped was at all times the property of defendants. The testimony will support no finding other than that Wade & Jack, from time to time, sold cattle to defendants, taking drafts with bills of lading to be credited upon account. It is not shown that Wade & Jack did not sell cattle to defendants; that a debt was not incurred, or that any part of the proceeds of the several drafts was ever paid to defendants. The sum of the record, in so far as it affects the plaintiff, is that the drafts were drawn to pay the purchase price of certain live stock butchered by defendants.

Were we willing to disregard the rule that fraud is never presumed, but is to be proved by testimony at once strong,

cogent, and convincing, we find no evidence upon which a finding of actual fraud can be based, nor is there anything from which fraud can be inferred. The fact that defendants were not strong financially is an argument in favor of the transaction as detailed by Wade & Jack and the garnishee, rather than against it. The habit of financing the movement of goods and commodities so as to protect the purchase price through the mediumship of drafts and bills of lading by those having a limited credit is so firmly fixed in the business world that courts have accepted it as within the range of general knowledge, and, therefore, a thing to be judicially noticed. *First Nat. Bank of Pullman v. Northern Pac. R. Co.*, 28 Wash. 439, 68 Pac. 965.

Respondent has not sustained the burden of proof. It has failed to show title in its adversary defendant, or any equity in itself superior to that of the garnishee, and must fail unless its motion to dismiss the appeal is well taken. Judgment against the garnishee was rendered on April 22, 1916. Appeal was perfected on the 9th day of June, 1916. Respondent rests its motion on Rem. Code, § 1718:

"In civil actions and proceedings an appeal from any final judgment must be taken within ninety days after the date of the entry of such final judgment; and an appeal from any order, other than a final order, from which an appeal is allowed by this act, within fifteen days after the entry of the order. . . ."

and upon *Seattle Trust Co. v. Pitner*, 17 Wash. 365, 49 Pac. 505, and *Loveday v. Parker*, 50 Wash. 260, 97 Pac. 62. Respondent's contention is that the judgment against the garnishee is "an order other than a final order"; that the "final order" in this case is the judgment rendered in the principal action; and that the appeal, not having been taken within fifteen days, should be dismissed. But we think the motion is not well taken. Whether a finding that a garnishee is owing, or has property in his control or custody belonging to, the principal debtor is a final order or judgment depends

entirely upon the state of the law as revealed by statute or the want of a statute.

Under the old practice of impounding a debt owing, or property in the hands of a third party, whether called a trustee process, factorizing, foreign attachment, or equitable attachment, no judgment was ever entered. The plaintiff could do no more than sue out a *scire facias* in aid of his judgment against the principal defendant. In this country, the old practices never found favor, and it is agreed by all writers that the remedy by garnishment is purely statutory. 9 Ency. Plead. & Prac. 809.

Originally garnishments were issued in aid of attachment proceedings. The practice grew up under a custom of London and was no more than a warning, to a person in whose hands the effects of another are, not to pay the money or deliver the property of the defendant in his hands to him, but to appear and answer the plaintiff's suit. Black, Law Dictionary, Title Garnishment. Prior to the act of 1893 (Laws of 1893, p. 95), the practice was to impound money and property in the hands of third persons by service of a copy of the writ of attachment, that is, by serving a writ of attachment upon the person suspected of owing, or of having property in his possession belonging to, the principal defendant. Code of 1881, § 179; 2 Hill's Code, § 300. Under the former practice, the attachment, whether of specific property or of a debt owing, or of property in the hands of a third party, was purely ancillary to the main action, and no binding judgment could be entered against the garnishee until a. judgment was entered in favor of the plaintiff in the main case. So that, prior to the passage of the act of 1893, a finding made before judgment was interlocutory in the true sense of the term, and was not to be entered except as a part of the main judgment. 9 Ency. Plead. & Prac. 849, and cases cited.

Under the code of 1881, attachments might issue in all cases where a cause of action existed against the defendant, and where the debt was not secured by mortgage or pledge,

or if so, where the security had become inadequate.  Code of 1881, § 175.  By the act of 1885-6 (Laws of 1885-6, p. 39), this statute was repealed, and thereafter attachments could be issued only upon a showing of indebtedness, and in cases other than where defendant was a nonresident, only upon a showing of fraud or fraudulent concealment.  The garnishment, by service of the copy of the writ of attachment, was not an adversary proceeding.  *Coombs v. Davis,* 2 Wash. Terr. 466, 7 Pac. 860.  This, in effect, denied a right to impound a debt owing, or property belonging to, a defendant when due from, or in the hands of, a third party, for he could be charged only by service of the writ, and the writ could only issue generally upon a showing of fraud.

By the terms of the act of 1885-6, p. 44, § 22, the garnishee became liable to the plaintiff only in case a judgment was recovered by the plaintiff.  This was the state of the law when the act of 1893 (Laws of 1893, p. 95) was passed providing for a procedure independent of the attachment statute, and providing for a judgment independent of the main case.  Our statute is not uncommon.  It is provided by statute in most of the states that an absolute judgment may be entered against the garnishee and enforced by execution as in ordinary cases.  Rood, Garnishment, § 391, and cases cited.  By these statutes, a garnishment proceeding is made an adversary proceeding and, for the purpose of determining the respective rights of the parties to it, is essentially and in effect a suit or action against the garnishee by the defendant in the name of and for the benefit of the plaintiff, and it has been held by a great preponderance of the courts that such proceedings fall within, and are to be determined by reference to, the statutes governing procedure, both civil and appellate, as in other cases.  Rood, Garnishment, §§ 3 and 405.

This court held in *State ex rel. Wyman etc. Co. v. Superior Court,* 40 Wash. 443, 82 Pac. 875, 111 Am. St. 915,

2 L. R. A. (N. S.) 568 (followed in *State ex rel. Stewart & Holmes Drug Co. v. Superior Court*, 67 Wash. 321, 121 Pac. 460), that a "garnishment proceeding is neither more nor less than an action by the defendant against the garnishee for the use of the plaintiff." In *Tatum v. Geist*, 40 Wash. 575, 82 Pac. 902, the court said:

"While a garnishment is ancillary to the main action, it is nevertheless a proceeding within the meaning of the statute regulating appeals to this court."

It is provided, in terms, that a judgment shall be entered. The judgment forecloses every right of the garnishee and determines finally the issue raised by the affidavit and answer. The judgment is final in that it holds that the money owing or property in possession is not money or property of the garnishee. Execution will issue immediately. If judgment has already been obtained against the principal defendant, the amount realized on execution is to be credited upon the judgment. If such judgment has not been obtained, the proceeds of the execution are to be paid to the clerk to be held *pendente lite*, and if judgment goes in favor of the principal defendant, "the amount made on said execution against the garnishee shall be paid to the defendant." Rem. Code, § 694.

If the writ had issued after judgment in the main case, it would hardly be contended that a judgment against the garnishee was not final. The statute has abolished all distinctions arising out of the time of entry by making the judgment payable in any event, without reference to the time of entry, instead of leaving the garnishment proceeding to abate in case no judgment is entered against the principal defendant, as it did under the old practice.

A final order or judgment is one entered after trial upon an issue of fact or law which goes to the merit of the case, and when entered, concludes the party against whom it is rendered from further pursuing his right or remedy in the court in which it is entered. If this does not bring a judg-

ment against a garnishee within the commonest definition of a final judgment, we would be at a loss to contrive a state of facts which would.

Neither do we think that the cases relied on by respondent avail it. We do not feel called upon to question them in this case for, under the statute, they could not apply after the entry of a judgment on the merits. There is a vast difference between an order quashing a writ and a trial upon the merits. A writ of garnishment may be quashed for lack of form or substance. An alias writ may issue immediately. The order is not necessarily a final order. *Tatum v. Geist, supra*. Then, too, there may be sound reason for holding that an appeal from such an order should be taken within fifteen days, especially so when the inquiry goes only to some interlocutory question that may be cured or settled in the course of the proceeding, or which should be cleared away so that a trial on the merit of the issue may not be unreasonably delayed.

Counsel cite some authority evidently for the purpose of convincing us that the garnishee's right to appeal would come after the entry of judgment in the principal action. It may be that the garnishee might have waited and appealed from the judgment entered in the main case. If it had, we may assume that respondent would then contend, and more reasonably, that the statute provided for a final judgment against the garnishee, and the appeal was not in time. The case of *Durk v. Scully*, 41 Wash. 357, 83 Pac. 426, is cited. The remark of the court: "But the appellant is mistaken as to the effect of the judgment rendered. It is not a judgment against it, and no execution could be issued against it for the money in its possession," was not necessary to a decision, and seems to have been made without regard for the then existing statute.

But we are not called upon to decide that question. We are convinced that the garnishee has a clear right of appeal as it is. Garnishees are not, as a rule, voluntary parties to

a lawsuit.    Their rights and their liabilities rest in the statutes, and courts should not speculate in methods by which they may be thrown between the devil and the deep sea.

Reversed, and remanded with directions to enter a judgment in favor of the garnishee.

ELLIS, C. J., MORRIS, MAIN, and WEBSTER, JJ., concur.