[No. 27290. Department One. March 24, 1939.]

W. G. McAVOY, *Respondent,* v. L. S. WEBER *et al., Defendants,* HOME OWNERS' LOAN CORPORATION, *Appellant.*[1]

[1]Reported in 88 P. (2d) 448.

*Tom S. Patterson, Russell F. Stark,* and *Pendleton Miller,* for appellant.

*Koenigsberg & Sanford,* for respondent.

STEINERT, J.—This appeal grows out of a garnishment proceeding. Plaintiff, having recovered judgment against F. C. Weber and wife, sued out a writ of garnishment directed to Home Owners' Loan Corporation, which employed Weber as supervisor of its property management section. The garnishee defendant appeared specially and moved to quash the writ on the ground that the corporation was an instrumentality of the United States of America and not subject to garnishment. The motion was denied. Preserving its special appearance, the garnishee defendant then

answered, admitting that it was indebted to Weber, its employee, for salary earned, in the sum of $312.48, which it was ready, willing, and able to pay to Weber were it not for the writ of garnishment. The answer reiterated the grounds stated in the motion to quash, and further alleged that the garnishee defendant was incorporated pursuant to the Home Owners' Loan act passed by Congress June 14, 1933; that its entire business and scope of operations were prescribed by the act of its creation; and that, therefore, the salary of its employee was not subject to garnishment by process from any state court.

Plaintiff thereupon moved for judgment on the pleadings. The court granted the motion, and entered judgment against the garnishee defendant in the sum of $234.09, which was the amount owing to plaintiff upon his judgment against the principal defendants. The garnishee defendant has appealed.

The question presented for determination is whether or not the Home Owners' Loan Corporation is subject to garnishment. The superior court answered the question in the affirmative.

Garnishment is a purely statutory proceeding. *Morris & Co. v. Canadian Bank of Commerce*, 95 Wash. 418, 163 Pac. 1139; *Pacific Coast Paper Mills v. Pacific Mercantile Agency*, 165 Wash. 62, 4 P. (2d) 886; *Van Moorhem v. Roche Harbor Lime & Cement Co.*, 169 Wash. 354, 13 P. (2d) 496. The right to garnish exists only when clearly sanctioned by the statutory law. 28 C. J. 25, § 13.

Rem. Rev. Stat., § 680 [P. C. § 7999], originally enacted in 1893, provides, among other things, that a writ of garnishment may issue in a case where the plaintiff has a judgment, wholly or partially unsatisfied, in the court from which he seeks the writ. On its face, this section of the statute is general in its

application, and comprehends any case wherein the plaintiff holds an unsatisfied judgment against any person, individual or corporate, although it contains no express provision either permitting or prohibiting garnishment of a public corporation.

However, according to the weight of authority, although there are many cases to the contrary, general provisions authorizing garnishment do not, in the absence of clearly expressed legislative intent, apply to municipal or quasi-municipal corporations, or other public bodies charged with the performance of governmental functions.   28 C. J. 56, § 67.

In recognition of that rule, this court has held that Rem. Rev. Stat., § 680, does not apply to counties. *State ex rel. Summerfield v. Tyler,* 14 Wash. 495, 45 Pac. 31, 53 Am. St. 878, 37 L. R. A. 207; *Flood v. Libby,* 38 Wash. 366, 80 Pac. 533, 107 Am. St. 851.   Those decisions were rested on grounds of public policy.   *Hanson v. Hodge,* 92 Wash. 425, 159 Pac. 388.

In 1915, the statute was amended (Rem. Rev. Stat., § 680-1 [P. C. § 8026]), to make counties, cities, towns, school districts, and *other municipal corporations* subject to garnishment after judgment.   By thus expressly extending the scope of the original statute, as previously limited by the *Summerfield* and *Flood* cases, *supra,* the legislature impliedly recognized that the statute prior to its amendment did not apply to municipal or other public corporations, agencies, and officers. However, it will be noted that the amending statute, Rem. Rev. Stat., § 680-1, does not specifically or inferentially provide that public corporations performing governmental functions shall be subject to garnishment.   Such corporations, under the generally accepted rule, would still be exempt.

The question then arises as to the legal status of the Home Owners' Loan Corporation, that is,

whether, because of its peculiar nature and function, it is to be considered a public corporation immune from garnishment, or a private corporation subject to such process.

In form, the corporation is undoubtedly a private one. Whether it is such in essence, depends upon the purposes for which it was created by the act and the nature of the activities which it exercises thereunder.

The corporation was created under the Home Owners' Loan Act of 1933, 48 Stat. 128, 12 U. S. C. A., § 1461, et seq. The purposes of the act, according to its title, were to provide emergency relief with respect to home mortgage indebtedness, to refinance home mortgages, to extend relief to the owners of homes occupied by them and who were unable to amortize their debts elsewhere, and to increase the market of the obligations of the United States. The act authorized the Federal Home Loan Board, then in existence, to create a corporation to be known as Home Owners' Loan Corporation,

". . . which shall be an instrumentality of the United States, which shall have authority to sue and be sued in any court of competent jurisdiction, Federal or State, and which shall be under the direction of the Board and operated by it under such bylaws, rules, and regulations as it may prescribe for the accomplishment of the purposes and intent of this section [§ 4(a)]." 12 U. S. C. A., § 1463(a).

The act provided that the capital stock of the corporation was to be not in excess of $200,000,000, all of which was to be subscribed for by the secretary of the treasury on behalf of the United States. The corporation was authorized, for a period of three years, to issue bonds to the extent of $4,750,000,000 with which to obtain funds for carrying out the purposes of the act; to exchange those bonds for home mortgages and other obligations and liens secured by real estate; to

make cash loans to such home owners as were unable to obtain loans from ordinary lending agencies; and to redeem homes lost to the owners by foreclosure or forced sale. Payment of the bonds issued by the corporation was guaranteed, both as to principal and interest, by the United States.

The corporation was authorized to select, employ, and fix the compensation of such officers, employees, attorneys, etc., as it deemed necessary in the performance of its duties, and to determine its necessary expenditures and the manner in which they should be incurred, allowed, and paid, without regard to the provisions of any other law governing the expenditure of public funds. The bonds of the corporation were exempted from all taxation except surtaxes, state inheritance taxes, and gift taxes, and the corporation and all its property were exempted from all taxes except real property taxes. The corporation was given free use of the mails. Upon liquidation, all surplus or accumulated funds were to be paid into the United States treasury.

It thus appears from the act itself that the corporation is an "instrumentality of the United States." We have ourselves heretofore so recognized it. *Home Owners' Loan Corp. v. Rawson,* 196 Wash. 548, 83 P. (2d) 765. It also appears that all of the capital stock of the corporation is owned and held by the United States. But it is equally apparent that the corporation was created for the purpose of engaging in business of a purely commercial character such as theretofore had been conducted by private individuals and corporations. Its operations consisted of loaning money and refinancing mortgages on homes. Although it was an enterprise which, by reason of its scope and magnitude, affected a considerable number of indi-

viduals, it nevertheless simply exhibited a multiplication of private transactions.

Its object was not to aid the government in the exercise of its sovereign powers, legislative, executive, or judicial, nor was it designed to facilitate some project or means by which the government, as such, was to be protected or benefited. The current of advantage ran in the opposite direction. The corporation was simply an instrument or means by which the government rendered temporary financial assistance to certain individuals. Its operations involved merely a series of ordinary business transactions wherein the corporation would lend to a certain class of borrowers, provided the security was ample, and wherein the borrower might elect, but was not compelled, to borrow.

The government did not undertake to accomplish the purposes of the act through its own governmental agencies, but created a new and distinct entity in the form of a private corporation. If there be any ultimate profit or loss in the final liquidation of the corporation, the government takes the consequences just as private individuals or corporations would do under a similar experience. If there be a profit, no governmental need will have been subserved; if there be a loss, no governmental function will have been impaired. Although the corporation was designed, and is owned, controlled, and supported as an instrumentality of the United States, it, nevertheless, has the character and all the attributes of a private domestic corporation.

It is urged, however, that, even if the corporation is not engaged in accomplishing the ends for which the Federal government was established, the peculiar character of the corporation and its functions are such that public policy allowing an immunity from garnish-

ment ought to be extended to encompass such an agency.

So far as the state is concerned, we see nothing in its public policy inimical to the maintenance of a garnishment action against appellant. Under our present garnishment statute, the state, counties, and municipalities may be garnished. There can be no reason for exempting an agency which, even though it be an instrumentality of the United States, is nevertheless a distinct entity with no sovereign powers, and having all the attributes of a private corporation engaged in commercial transactions. If the corporation be, in law, a private one, it would be against the express public policy of this state to exempt it from garnishment.

Appellant cannot here rely upon the doctrine that public policy forbids a disturbance of the Federal government by private litigation, because the process of garnishment in such cases as this will in no way interfere with the powers or acts of the sovereign. The Home Owners' Loan act authorized the corporation to sue and be sued in any court of competent jurisdiction, Federal or state. If it can sue upon its contracts, it surely can garnish. If it is engaging in a commercial business, under the protection and privileges afforded by the law of a state, it should be amenable to all the lawful processes, including garnishment, afforded by such state against other corporations doing a similar business.

But even if the corporation were considered to be engaged in a public function, it does not appear to us that it was the intent of Congress to create an agency immune from garnishment. It is a matter of common knowledge that the corporation has many employees. The government certainly has no desire that they shall escape the payment of their honest debts. If, in pass-

ing the act, the Congress of the United States felt that the business of loaning money through its instrumentality had no relation to the personal honesty of its employees in their private transactions, and that such business might in some way be jeopardized by allowing the corporation to be garnished, it could easily have written into the act a clause providing immunity from such process. Congress did not do that expressly, and we think it a fair inference that it did not intend the same result by implication. From the fact that Congress specifically exempted the corporation from taxation, there is a strong inference that it did not intend to confer an unexpressed exemption, particularly one that affected a process ordinarily incident to suit, to which appellant was, by the terms of the act, made liable.

In the consideration of this case, many authorities have come to our attention, both by citation on the part of counsel and by independent search. For the most part, however, those cases involve questions that are fundamentally different from the one now before us; and, while, as authorities, they are instructive in a general way, they do not afford any satisfactory guidance to the solution of our present problem. For this reason, we do not discuss them. However, there are four cases which bear directly upon the question presented here, and to these we will briefly advert.

In the case of *Gill v. Reese,* 53 Ohio App. 134, 4 N. E. (2d) 273, plaintiff recovered judgment against defendant, and thereafter procured a writ of garnishment against Home Owners' Loan Corporation. The garnishee defendant filed a motion to quash the writ. The motion was granted, and the plaintiff appealed. In reversing the order of the trial court, the appellate court said:

"Great confusion has arisen in the submission of this case to this court on the proposition whether or not the corporation itself is a public one. There can be no question but that the corporation is an instrumentality of the government, engaged in a great undertaking affecting the public. The distinction failed to be recognized is that while the undertaking itself has the characteristics of a public enterprise yet the acts have been authorized by Congress itself to be performed by and through the arm of a private corporation, rather than by means of the exercise of power by a government officer, or by the legislative body itself. The authorities are uniform in establishing the law to be that such a corporation is a private corporation."

The broad principle of law applied by the court in that case was that it was, in general, highly desirable that, when governmental agencies are used in industrial and commercial ventures, they should be subject to the same liabilities and to the same tribunals as other persons or corporations similarly involved. Concerning the question of public policy, the court held that the rule of immunity was not applicable, for the reason that, in answering such process, the corporation would not be interrupting its functions, but rather would be furthering its general purpose in seeing that its funds were placed in the hands of those to whom they were due.

In *Central Market v. King,* 132 Neb. 380, 272 N. W. 244, wherein the trial court refused to quash a writ of garnishment directed to Home Owners' Loan Corporation, the facts were almost identical with those in the case at bar. In affirming the order of the lower court, the supreme court of Nebraska held that the Home Owners' Loan Corporation must be regarded as a separate entity, even though all its capital stock was held by the United States, and approved the doctrine that, when the United States enters into commer-

cial business, it abandons its sovereign capacity, and is to be treated like any other corporation. Upon the subject of public policy, the court expressed itself in much the same language as that used by the Ohio court in the *Gill* case, *supra*.

In *H. & P. Paint Supply Co. v. Ortloff*, 159 Misc. 886, 289 N. Y. Supp. 367, wherein the facts were similar to those in the two preceding cases, the Home Owners' Loan Corporation, as garnishee, made the contention that, as an instrumentality of the Federal government, it could not be subjected to third party proceedings supplemental to judgment. In its opinion, the court pointed out the various characteristics wherein the corporation resembled a private corporation, and held that, as a Federal instrumentality, it was not exempt from such process. The reason given by the court was that any inconvenience caused by garnishment would not interfere with the performance of the purposes for which the corporation was created, and that allowance of the process was not violative of public policy or in derogation of the act. The court further held that, under all of the attendant circumstances, exemption from process should not be implied.

The three cases to which reference has just been made were cited with approval in the following: *Biedermann v. Home Owners' Loan Corp.*, 20 Fed. Supp. 23; *Pennell v. Home Owners' Loan Corp.* 21 Fed. Supp. 497; *Casper v. Regional Agr. Credit Corp.*, 202 Minn. 433, 278 N. W. 896. Cf., *Keifer & Keifer v. Reconstruction Finance Corp.*, 306 U. S. 381, 59 S. Ct. 516.

On the other hand, the case of *Home Owners' Loan Corp. v. Hardie & Caudle*, 171 Tenn. 43, 100 S. W. (2d) 238, 108 A. L. R. 702, supports the view that the corporation is not subject to garnishment because it is a governmental agency with its funds in the treasury of the United States, and because the act creating the

corporation discloses neither express nor implied intention that the corporation shall be subject to garnishment.

We are in accord with the views expressed by the Ohio, Nebraska, and New York courts, and, as a conclusion to what we have already stated, we hold that appellant is a private corporation subject to garnishment in actions of this kind.

Since a private corporation is shown to have in its possession funds owing to its employee against whom there exists an unsatisfied judgment, the case comes within Rem. Rev. Stat., § 680, and a writ of garnishment is effective to reach such funds.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and JEFFERS, JJ., concur.

