DIAMOND CORK COMPANY

*vs.*

MAINE JOBBING COMPANY

and

LUKE DAVIS and RALPH STICKNEY, Trustee.

Knox.    Opinion February 24, 1917.

*Delivery of personal property as evidence of passing title.    General rule as to trustee process being an equitable form of action.    Equitable remedies where writings indicate that the parties intended thereby to transfer the right to a particular property or fund.*

October 28, 1913, the principal defendant, the Jobbing Company and the alleged trustees, Davis and Stickney, entered into a written executory contract of sale of personal property wherein the Jobbing Company agreed to sell, at a fixed price, to Davis and Stickney its bottling establishment on condition, however,

that the vendor should be able to turn over to the vendees "its contract with the Coca Cola Company." Possession of the property was turned over to Davis and Stickney at the time the executory contract of sale was made. Thereafter, December 20, 1913 and before the Jobbing Company was able to turn over to Davis and Stickney its contract with the Coca Cola Company, it mortgaged the same property to one Isidor Gordon. That mortgage was made subject to the contract for the sale of the property to Davis and Stickney, and it provided that if that sale was carried out the purchase money was to go to the mortgagee "as part or entire payment for the indebtedness secured by this mortgage." The mortgage was duly recorded. Thereafter the Coca Cola Company made a satisfactory contract with Davis and Stickney direct, and at the time this trustee process was served upon them they had in their hands a balance of $551.46 of the purchase price of said property. Isidor Gordon appears as claimant of that fund by virtue of his mortgage.

*Held:*

1. That the evidence justifies the finding of the presiding Justice that the claimant's mortgage was given to secure a bona fide debt and was not fraudulent.

2. That, where at the time of the execution of an executory contract of sale of personal property, the possession of the property is delivered to the vendee, the question whether the title to the property then passed to the vendee depends upon whether it was the intention of the parties that the title should pass at that time.

3. That, looking at the contract of October 28, 1913 and considering all facts and circumstances disclosed, it seems apparent to the Court that it was not contemplated by the parties that the title to the property mentioned in the contract was to pass then to Davis and Stickney, or before the Coca Cola contract could be turned over to them.

4. That the title to the property had not absolutely passed to Davis and Stickney at the time the mortgage was given to the claimant, and that the Jobbing Company then had an interest therein which passed by its mortgage to the claimant as security.

5. That the trustee process, though in form an action at law, is in substance an equitable proceeding to determine the ownership of a fund in dispute, especially where a claimant has appeared and become a party to the suit. And as between the plaintiff in such an action and the claimant of the fund equitable considerations must prevail as far as the nature of the process will permit,

6. That if there could be any doubt as to the claimant's right to the fund, determining his right according to strict legal principles, there can be no doubt as to his right to the fund when equitable principles are applied. The mortgage was intended by the parties thereto to be effective to give the mortgagee, as security, the mortgagor's entire interest at the time in the property, that is, the property itself if the executory contract of sale was not carried out, and the proceeds of the sale if it was carried out. In equity the mortgage will be regarded as an assignment of the fund, if that be necessary to effectuate the manifest purpose of the parties, for equity disregards mere form.

Action of assumpsit brought by plaintiff to recover a certain sum of money on an account annexed with trustee process. The principal defendant admitted liability and the question involved related principally to the liability of the trustees; the principal defendant having given a mortgage on its property and the mortgagee was called into court, claiming the fund in the hands of the trustee. The presiding Justice ruled that the money disclosed was not held on trustee process, but was held under and by virtue of the mortgage and belongs to the claimant as mortgagee. To this ruling, plaintiff filed exceptions. Exceptions overruled.

Case stated in opinion.

*A. S. Littlefield,* for plaintiff.

*M. A. Johnson,* for defendant.

SITTING: SAVAGE, C. J., KING, BIRD, HALEY, PHILBROOK, JJ.

KING, J. Action of assumpsit on an account annexed. The principal defendant admitted its liability. The trustees disclosed a balance of $551.46, claimed by one Isidor Gordon who appeared as claimant of the fund. The presiding Justice found and ruled that the claimant is entitled to the fund and that the trustees should be discharged. The case comes before this court on plaintiff's exceptions.

The material facts are not in dispute. October 28, 1913, the Maine Jobbing Company, owning and operating a bottling establishment wherein, under a contract with the Coca Cola Company, it bottled and sold coca cola only, made a written contract with the alleged trustees, Davis and Stickney, to sell to them its bottling establishment with all the machinery and appliances connected with the same, also all its stock and fixtures thereto belonging, reserving its book accounts, at prices specified. The agreement, signed by both parties thereto, contained the following conditions and provisions:

"This contract is made, however, subject to the party of the first part being able to turn over to the party of the second part its contract with the Coca Cola Company.

"The party of the first part agrees to turn over everything it has in its possession to the party of the second part at once, and hereby acknowledges that it has received to bind the above contract $100.00 (one hundred dollars). Should, however, the contract fail for the reason that the party of the first part cannot turn over its contract

with the Coca Cola Co., the party of the first part shall not be liable to the party of the second part for any loss of time or expense of the party of the second part, but shall return to the party of the second part the sum of $100. in full settlement of all claims and damages on the part of the party of the second part.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The party of the second part agrees to the above terms and further agrees that if the party of the first part is able to turn over its contract with the Coca Cola Co. to the party of the second part and the party of the second part do not keep their part of the above contract, they, the party of the second part shall forfeit $100.00."

Davis and Stickney took immediate possession of the property as provided for in the contract. Soon after the contract was executed the treasurer of the Jobbing Company and Mr. Stickney went to Boston and saw the New England Agent of the Coca Cola Company for the purpose of getting the assent of that Company that the Jobbing Company might turn over to Davis and Stickney its contract with the Coca Cola Company. The assent was not given, but Davis and Stickney were permitted by the agent to continue the business of bottling coca cola in the establishment until the Coca Cola Company should determine what action it would take in the premises. Under that permission Davis and Stickney carried on the business until the early part of January, 1914, when they received a new contract, dated January 1, 1914, made by the Coca Cola Company with them direct. This trustee process was served on Davis and Stickney January 13, 1914.

December 20, 1913, the Maine Jobbing Company executed and delivered to the claimant a mortgage of its said bottling establishment, stock and fixtures, and all other property belonging to the grantor and pertaining to said business. It contained the following provision.

"Subject, however, to the contract made by the grantor with Luke Davis and Ralph Stickney on the twenty-eighth day of October, 1913, said Davis and Stickney having the full right to carry out said contract, as per the terms of contract, but in so doing, it shall be credited by said Gordon on the indebtedness secured by this mortgage,

and all money paid by said Stickney and Davis on said contract shall be given credit to this grantor as part or entire payment for the indebtedness secured by this mortgage."

The mortgage was given to secure $600 payable in two years, and it was duly recorded December 22, 1913.

1. At the hearing an issue was raised by the plaintiff that the claimant's mortgage was not given to secure a bona fide debt, but was fraudulent. The presiding Justice found otherwise, and we think the evidence justifies that finding.

2. But it is further claimed by the plaintiff that the mortgage is of no validity because the title to the property had passed to the trustees, and the Maine Jobbing Company had nothing to which the mortgage could attach. We think that claim is not sustainable under the facts and circumstances disclosed. It is true that the property was turned over to Davis and Stickney at the time the contract of sale was executed, as therein provided for. And it is doubtless true that the delivery of possession of personal property to the vendee, under an executory contract of sale, is an important fact to be considered in determining whether the title has passed to the vendee. If the delivery is absolute, it furnishes strong evidence that the parties intended to pass the title, in the absence of anything evincing a contrary intention. And, as in all such cases, the question here raised, whether title to the property passed to Davis and Stickney at the time they took possession of it under the terms of the contract of sale, depends upon whether it was the intention of the parties that the title to the property should pass at that time. Looking at the contract of October 28, 1913, it is, we think, apparent that it was not contemplated by the parties that the title to the property mentioned in the contract was to pass then to Davis and Stickney. Plainly they did not intend to purchase the bottling establishment at the specified price of $6000, and the stock on hand at cost prices, *unless* they could have the right to bottle coca cola therein which the Jobbing Company had under its contract with the Coca Cola Company. Without that right, or an equivalent right, the property would be of little value.

That both parties to the contract of October 28, 1913 understood that it was to remain executory, and that the title to the property was not to pass to Davis and Stickney until the Jobbing Company should be able to turn over to them the contract with the Coca Cola Com-

pany, is clearly shown by the contract itself. For it is therein expressly provided, that should the contract fail for the reason that the Jobbing Company could not turn over its contract with the Coca Cola Company it was not to be liable to Davis and Stickney for any damages, but should only return to them the $100 which it had received from them, the same to be "in full settlement of all claims and damages" on their part. Indeed the contract shows that Davis and Stickney were not bound thereby to purchase the property in any event, even if the Jobbing Company was able to turn over to them its contract with the Coca Cola Company. They could then refuse to take the property and be wholly free of the contract, except that they would then forfeit the $100 which they had paid. Considering these provisions of the contract of October 28, 1913, and all the other facts and circumstances disclosed, it seems clear to us that the title to the property had not absolutely passed to Davis and Stickney at the time the mortgage was given by the Jobbing Company to the claimant, December 20, 1913, and that the Jobbing Company then had an interest therein which passed by its mortgage to the claimant as security.

Moreover, the trustee process, though in form an action at law, is in substance an equitable proceeding to determine the ownership of a fund in dispute, especially where a claimant has appeared and become a party to the suit. And as between the plaintiff in such an action and the claimant of the fund equitable considerations must prevail as far as the nature of the process will permit. *Harlow v. Bangor*, 96 Maine, 294, 296. The mortgage to the claimant was intended by the parties thereto to be effective to convey the property which the Jobbing Company had previously agreed to sell to the trustees, subject, however, to that agreement. It was intended that the mortgage should give the mortgagee, as security, the mortgagor's entire interest in that property,—the property itself if the executory contract of sale was not carried out, and the proceeds of the sale if it was consummated. The mortgage secured a bona fide debt. It was duly and seasonably recorded prior to the beginning of this action. And if there could be any doubt (and it seems to us there cannot be) as to the claimant's right to the fund disclosed, determining the effect of his mortgage according to strict legal principles, certainly there could be no doubt as to his right to the fund when equitable principles are applied. In equity his mortgage will be regarded as an assign-

ment of the fund, for equity disregards mere form. Any writing plainly indicating that the parties intended thereby to transfer the right to a particular property or fund will be treated in equity as a transfer or assignment of the property or fund as may be necessary to effectuate the manifest purpose of the parties.

*Exceptions overruled.*