FEDERAL HOUSING ADMINISTRATION, REGION NO. 4, *v.* BURR, DOING BUSINESS AS SECRE-TARIAL SERVICE BUREAU.

No. 354.   Argued January 31, February 1, 1940.—Decided February 12, 1940.

*Mr. Sidney J. Kaplan,* with whom *Solicitor General Jackson, Assistant Attorney General Shea,* and *Messrs. Melvin H. Siegel, Paul A. Sweeney, Thomas Harris,* and *Abner H. Ferguson* were on the brief, for petitioner.

*Mr. Gus O. Nations* for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The question presented here is whether the Federal Housing Administration is subject to garnishment for moneys due to an employee. The Supreme Court of the State of Michigan held that it was. 289 Mich. 91; 286 N. W. 169. We granted certiorari in view of the importance of the problem and the confused state of the authorities on the right to garnishee recently created agencies or corporations of the federal government.[1]

In 1930 respondent obtained final judgment in Michigan against one Heffner and one Brooks. In 1938 petitioner was served with a writ of garnishment issued by the Michigan court.[2] Petitioner appeared and filed an answer and disclosure stating that Brooks was no longer connected with it due to his death subsequent to service of the writ but admitting that it owed Brooks at the time

---

[1] Garnishment of wages due an employee of the United States Shipping Board Merchant Fleet Corporation was disallowed in *McCarthy* v. *United States Shipping Board Merchant Fleet Corp.,* 60 App. D. C. 311; 53 F. 2d 923. Contra: *Haines* v. *Lone Star Shipbuilding Co.,* 268 Pa. 92; 110 A. 788. As to the Home Owners' Loan Corporation, a similar conflict of decisions has arisen. That it is not subject to garnishment see *Home Owners' Loan Corp.* v. *Hardie & Caudle,* 171 Tenn. 43; 100 S. W. 2d 238. And see *Manufacturer's Trust Co.* v. *Ross,* 252 App. Div. 292; 299 N. Y. S. 398. That it is subject to garnishment see *Central Market, Inc.* v. *King,* 132 Neb. 380; 272 N. W. 244; *Gill* v. *Reese,* 53 Oh. App. 134; 4 N. E. 2d 273; *McAvoy* v. *Weber,* 198 Wash. 370; 88 P. 2d 448.

[2] Mich. Stat. Ann. (1938) § 27.1855 *et seq.*

of his death $71.11. Its answer further asserted that it was "an agency of the United States Government and is, therefore, not subject to garnishee proceedings." On motion of respondent judgment was entered against petitioner for the amount of its indebtedness to Brooks and execution was allowed thereunder. On appeal to the Supreme Court of Michigan that judgment was affirmed.

The problem here is unlike that in *Buchanan* v. *Alexander*, 4 How. 20, where creditors of seamen of the frigate Constitution were not allowed to attach their wages in the hands of a disbursing officer of the federal government. That ruling was derived from the principle that the United States cannot be sued without its consent. There no consent whatsoever to "sue and be sued" had been given. Here the situation is different. Sec. 1 of Title I of the National Housing Act (Act of June 27, 1934, c. 847; 48 Stat. 1246) authorized the President "to create a Federal Housing Administration, all of the power of which shall be exercised by a Federal Housing Administrator." That section was amended in 1935 (Act of August 23, 1935, c. 614; 49 Stat. 684, 722) by adding thereto the provision that "The Administrator shall, in carrying out the provisions of this title and titles II and III, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."

Since consent to "sue and be sued" has been given by Congress, the problem here merely involves a determination of whether or not garnishment comes within the scope of that authorization. No question as to the power of Congress to waive the governmental immunity is present. For there can be no doubt that Congress has full power to endow the Federal Housing Administration with the government's immunity from suit or to determine the extent to which it may be subjected to the judicial process. *Federal Land Bank* v. *Priddy,* 295 U. S.

229; *Keifer & Keifer* v. *Reconstruction Finance Corp.*, 306 U. S. 381.

As indicated in *Keifer & Keifer* v. *Reconstruction Finance Corp.*, *supra*, we start from the premise that such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. *Keifer & Keifer* v. *Reconstruction Finance Corp.*, *supra*. Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme,[3] that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

Clearly the words "sue and be sued" in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings. Garnishment and attachment commonly are part and

[3] Cf. *Porto Rico* v. *Rosaly*, 227 U. S. 270.

parcel of the process, provided by statute, for the collection of debts.[4]  In Michigan a writ of garnishment is a civil process at law, in the nature of an equitable attachment.  See *Posselius* v. *First National Bank,* 264 Mich. 687; 251 N. W. 429.  But however it may be denominated, whether legal or equitable,[5] and whenever it may be available, whether prior to [6] or after final judgment,[7] garnishment is a well-known remedy available to suitors. To say that Congress did not intend to include such civil process in the words "sue and be sued" would in general deprive suits of some of their efficacy.  Hence, in absence of special circumstances, we assume that when Congress authorized federal instrumentalities of the type here involved to "sue and be sued" it used those words in their usual and ordinary sense.[8]  State decisions barring gar-

[4] See Shinn, Attachment & Garnishment, Chs. I, XXIII.  As to garnishment of wage claims, see Sturges & Cooper, Credit Administration and Wage Earner Bankruptcies, 42 Yale L. Journ. 487, 503 *et seq.*

[5] Cf. *Williams* v. *T. R. Sweat & Co.,* 103 Fla. 461; 137 So. 698; *Campagna* v. *Automatic Electric Co.,* 293 Ill. App. 437; 12 N. E. 2d 695, with *Commercial Investment Trust, Inc.* v. *William Frankfurth Hardware Co.,* 179 Wis. 21; 190 N. W. 1004; *Diamond Cork Co.* v. *Maine Jobbing Co.,* 116 Me. 67; 100 A. 7.

[6] Col. Code Civ. Proc., ch. 7, § 129; Deering's Calif. Code Civ. Proc., § 543.

[7] N. Y. Civ. Prac. Act, § 684; Purdon's Penn. Stat. § 2994.  In Michigan no garnishment for money owing the principal defendant on account of labor performed by him shall be commenced until after judgment has been obtained against such principal defendant. Mich. Stat. Ann., § 27.1855.

[8] In *Weston* v. *City Council of Charleston,* 2 Pet. 449, 464, Chief Justice Marshall in defining the word "suit," as used in the 25th section of the Judicial Act of 1789 giving this Court jurisdiction to review on enumerated conditions a "final judgment or decree in any suit in the highest court of law or equity of a state in which a decision in the suit could be had" (43 Stat. 937), said:

"The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an

nishment against a public body though it may "sue and be sued" [9] are not persuasive here as they reflect purely local policies concerning municipalities, counties and the like, and involve considerations not germane to the problem of amenability to suit of the modern federal governmental corporation.

Our conclusion is strengthened by the legislative history of the many recently created governmental agencies or corporations. It shows that in but few instances was a proviso added to the "sue and be sued" clause prohibiting garnishment or attachment.[10] The fact that in the run of recent statutes no such exceptions were made and that in only a few of them were any special prohibitions included adds corroborative weight to our conclusion that such civil process was intended.

Up to this point, however, petitioner does not raise its major objections. Rather it grounds its claim to immunity from garnishment largely on statutory construction and on matters of policy. As to the former, it relies heavily on the fact that the authority to "sue and be sued" excludes cases unrelated to the Administrator's own duties or liabilities since the statute provides that the "Administrator shall, in carrying out the provisions of this title [Title I] and titles II and III" be authorized to

---

individual pursues that remedy in a court of justice, which the law affords him. The modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought, is a suit."

[9] *Central of Georgia Ry. Co.* v. *Andalusia*, 218 Ala. 511; 119 So. 236; *Duvall County* v. *Charleston Lumber Co.*, 45 Fla. 256, 265; 33 So. 531; *Chicago* v. *Hasley*, 25 Ill. 595.

[10] As respects the forty government corporations listed in *Keifer & Keifer* v. *Reconstruction Finance Corp., supra,* pp. 390–391, where Congress included the authority to "sue and be sued," express prohibition against attachment and garnishment was provided in only two instances. They are the Federal Crop Insurance Corporation (52 Stat. 72, 73) and the Farmers' Home Corporation (50 Stat. 527).

"sue and be sued." Petitioner therefore contends that Congress has consented to a suit against the Administrator only where the plaintiff is a party to a transaction with him which in turn is related to "carrying out" the provisions of those titles. Title I contains the only provisions material here. Sec. 1 gave the Administrator, inter alia, authority to appoint such officers and employees "as he may find necessary"; to "prescribe their authorities, duties, responsibilities, and tenure and fix their compensation, without regard to the provisions of other laws applicable to the employment or compensation of officers or employees of the United States"; and to "make such expenditures (including expenditures for personal services and rent at the seat of government and elsewhere, for law books and books of reference, and for paper, printing, and binding) as are necessary to carry out the provisions of this title and titles II and III, without regard to any other provisions of law governing the expenditure of public funds." Sec. 2 gave limited authority to the Administrator to insure financial institutions; § 3, authority to make loans to such institutions. Since the Administrator could be sued, in his official capacity, in "carrying out" the provisions of Title I, it would seem clear that such suits as were based on employment contracts made pursuant to the authority granted by § 1 were permitted. Accordingly, it seems clear that Brooks, whose claim [11] was garnisheed by respondent, could have sued on that claim and obtained the benefit of that civil process which was available in the appropriate state or federal proceeding. *Federal Land Bank* v. *Priddy, supra.* To allow respondent to reach that claim through a writ of garnishment is

---

[11] While the record shows that Brooks had been "connected" with the petitioner it does not show the nature of the debt due him. The brief which petitioner filed below, however, recited that Brooks was an  ιployee; and no defense was interposed that the claim did not arise under Title I of the Act.

therefore not to enlarge petitioner's liability nor to add one iota to the scope of § 1. For the end result is simply to allow a suit for the collection of a claim on which Congress expressly made petitioner suable. The mere change in the payee does not make the suit unrelated to the duties and liabilities of the Administrator under § 1.

But petitioner strongly urges considerations of policy against this conclusion and stresses the heavy burdens which would be imposed on such governmental instrumentalities if garnishment were permitted. It asserts that the task of preparing answers, disclosures and returns to numerous garnishment processes in the courts of each of the states would appreciably impede the federal functions of such an agency. It points to various state legislation regulating and restricting garnishment against public bodies and concludes that if immunity of public bodies from garnishment is to be abrogated, it should be done by legislation so that the remedy could be appropriately molded to fit the needs of government.

In our view, however, the bridge was crossed when Congress abrogated the immunity by this "sue and be sued" clause. And no such grave interference with the federal function has been shown to lead us to imply that Congress did not intend the full consequences of what it said. Hence, considerations of convenience, cost and efficiency [12] which have been urged here are for Congress which, as we have said, has full authority to make such restrictions on the "sue and be sued" clause as seem to it appropriate or necessary.

There is some point made of the fact that suit was brought against the Federal Housing Administration rather than against the Administrator. But when the

---

[12] Cf. Fortas, Wage Assignments in Chicago, 42 Yale L. Journ. 526; Nugent, Hamm, Jones, Wage Executions for Debt, Bull. No. 622, Bureau of Lab. Statistics, U. S. Dept. of Labor.

statute authorizes suits by or against the Administrator "in his official capacity" we conclude that that permits actions by or against the Federal Housing Administration. The Administrator acts for and on behalf of the Federal Housing Administration, since by express terms of the Act all of the powers of the latter "shall be exercised" by him. Hence action by him in the name of the Federal Housing Administration would be action in his official capacity.

Petitioner claims that execution should not have been allowed under the judgment. The Act permits the Administrator "to sue and be sued in any court of competent jurisdiction, State or Federal." Whether by Michigan law execution under such a judgment may be had is, like the availability of garnishment, *Federal Land Bank* v. *Priddy, supra,* a state question. And so far as the federal statute is concerned, execution is not barred, for it would seem to be part of the civil process embraced within the "sue and be sued" clause. That does not, of course, mean that any funds or property of the United States can be held responsible for this judgment. Claims against a corporation are normally collectible only from corporate assets. That is true here. Congress has specifically directed that all such claims against the Federal Housing Administration of the type here involved "shall be paid out of funds made available by this Act." § 1. Hence those funds, and only those, are subject to execution. The result is that only those funds which have been paid over to the Federal Housing Administration in accordance with § 1 and which are in its possession, severed from Treasury funds and Treasury control, are subject to execution. Since no consent to reach government funds has been given, execution thereon would run counter to *Buchanan* v. *Alexander, supra.* To conclude otherwise would be to allow proceedings against the United States where it had not waived its immunity. This re-

striction on execution may as a practical matter deprive it of utility, since funds of petitioner appear to be deposited with the Treasurer of the United States and payments and other obligations are made through the Chief Disbursing Officer of the Treasury.[13]  But that is an inherent limitation, under this statutory scheme, on the legal remedies which Congress has provided.  And since respondent obtains its right to sue from Congress, it necessarily must take it subject to such restrictions as have been imposed.  The fact that execution may prove futile is one of the notorious incidents of litigation, as is the fact that execution is not an indispensable adjunct of the judicial process.[14] ·

*Affirmed.*

Mr. Justice Murphy did not participate in the consideration or decision of this case.

---

[13] Fifth Annual Report, Federal Housing Administration (1938), p. 157.

[14] See *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U. S. 249, 263; *Commonwealth Finance Corp.* v. *Landis,* 261 F. 440, 443–444.  Cf. *Pauchogue Land Corp.* v. *Long Island State Pu. k Comm'n,* 243 N. Y. 15; 152 N. E. 451; *New South Wales* v. *Bardolph,* 52 Commonwealth L. Rep. 455.