RECONSTRUCTION FINANCE CORP. v.
CHILDRESS et al.

No. 14094.

United States Court of Appeals
Eighth Circuit.

July 13, 1950.

On Rehearing Dec. 15, 1950.
Second Petition for Rehearing Denied
Jan. 29, 1951.

Rufus Burrus, Independence, Mo. (James L. Dougherty, Washington, D. C., on the brief), for appellant.

A. E. Spencer, Jr., Joplin, Mo., and John R. Wallace, Miami, Okl. (A. C. Wallace, Ben T. Owens, Miami, Okl., and E. P. Dwyer, Jr., Joplin, Mo., on the brief), for appellees.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

The Reconstruction Finance Corporation brought this action as plaintiff to recover a money judgment against the defendants [1] in the aggregate amount of fifteen overdue and unpaid promissory notes for $5,000 each executed and delivered to plaintiff by defendants, together with interest, costs and attorney fees. The defendants in their answer admitted the execution and delivery of the notes but alleged that they issued them and plaintiff received them upon the condition agreed upon in writing between the parties that the notes were payable only from certain described mining property and the expected production from its operation which was all transferred in trust to secure such payment. They denied that they were personally liable to pay the notes. By amendment to its complaint the plaintiff alleged that the provision of the writing that the notes should constitute a promise to make payment "but only from the specified sources and securities" had been included in the writing referred to "by error, inadvertence and mistake" and prayed that the writing be reformed to conform to the true intent of the parties by deleting the provision. There was jurisdiction under 28 U.S.C.A. § 1349, and the case was tried to the court without a jury.

It appeared that the defendants were engaged in the mining business in the Joplin, Missouri, area, and prior to the transaction involved here had engaged in the production of minerals classified as strategic and critical materials in the National Defense Program of the government with the aid of government money advanced to them

---

1. F. J. Childress, H. L. Childress, W. L. Childress and L. L. Smith doing business under the firm name and style of F. J. Childress & Sons, a partnership.

through the plaintiff on the condition that the promissory notes they were required to and did execute to evidence the amounts advanced were to be paid only out of the property and expected production pledged for such payment. They made application for the $75,000 loan for the mining project here involved with the understanding and belief that the notes that would be required would likewise be payable only from the property and the production to be pledged for the purpose.

Each of the notes here sued on provides that it is secured by an Indenture and Chattel Mortgage dated November 12, 1946, executed by defendants prior to any of the notes and each note contains the following provision: "Reference is hereby made to said Indenture and Chattel Mortgage for a description of the property conveyed, the nature and extent of the security and the terms, conditions and covenants upon which said series of notes is issued, accepted and secured." The Indenture and Chattel Mortgage referred to in said notes provides, among other things, for the creation of a trust fund in the hands of the First National Bank of Joplin as Trustee whereby the mining property of the defendant partnership, called the Trustor, the advancements to be made by plaintiff under the loan, and the proceeds of all ore mined and sold in connection with the mining project therein referred to were to be deposited in said Trust Fund and out of which fund the Trustee was required to pay "the principal of and interest on the notes as and when due." The Indenture further provided the defendants should execute notes to the plaintiff corresponding to and coincident with its advances and "notwithstanding anything in this Article (Article IV) or elsewhere in this Indenture contained to the contrary or which might be deemed to the contrary, each of the Notes shall constitute a promise by the Trustor to make payment absolutely and unconditionally, but only from the specified sources and securities, of the sums specified in such Note, in accordance with the terms thereof."

The trial court found upon the evidence that at the time the defendants sumitted to the plaintiff their application for the mining project loan of $75,000 and at the time they executed the Indenture and Chattel Mortgage creating the trust through which the mining project was to be set up, provided with mining property, financed and operated, and at the time that the notes here sued on were executed and delivered "defendants were of the mind and opinion that they were making application and securing from plaintiff a mining loan of a self-liquidating nature, that is to say, that the loan secured and represented by the notes and the Indenture aforesaid was to be repaid out of the proceeds of the ore developed, mined and sold on the mining lease referred to in the evidence and the machinery and equipment placed thereon, and that they were not incurring any personal obligation to make repayment of said loan 'but only from (such) specified sources and securities.'"

The court declared as a matter of law that "In an action for the reformation of a written instrument because of mistake in the preparation thereof, strong, clear and convincing evidence must be adduced, establishing such mistake to be mutual as to all parties" and that "Plaintiff has not sustained the burden of proof so cast upon it, under the law, in this action." It held that the plaintiff was not entitled to reformation of the Indenture and Chattel Mortgage, as prayed.

Applying the contract as it was written, the court held that the notes when read with the Indenture to which they refer on their face for the "conditions * * * upon which [they are] issued, accepted and secured" "require and demand that [they] be paid only out of the proceeds of the Trust Fund thereby established and out of the sale of the property pledged as security by the terms of said document," and that plaintiff was not entitled to recover personal judgment against defendants.

Judgment of dismissal was entered accordingly and plaintiff appeals.

It contends very earnestly that the trial court was in error in refusing to decree reformation of the Indenture as prayed in its amended complaint. We do not understand that it complains of the court's declaration of the law to be applied in an

action for the reformation of a written instrument because of mistake in the preparation thereof above set forth. But it argues that the court's finding as to the defendants' understanding when applying for the loan for the present mining project and accepting and executing the documents prepared by plaintiff's agents to evidence the undertakings of the parties was "supported only by the flimsiest sort of oral testimony."

We have carefully considered the oral evidence as it appears in the record and we do not agree. There was convincing evidence that the defendants, who had on a previous occasion obtained from plaintiff a mining project loan on the self liquidating basis without incurring personal liability on the promissory notes they were then required to sign, believed that the mining loan here involved would be of the same character in that aspect and would be payable as distinctly stated in the Indenture only out of the trust property and would impose no personal liability upon them.

It is also contended for appellant that there are phrases and expressions to be found in the application for the loan, the resolution of the Board of Directors of the plaintiff authorizing the loan, the Indenture and Chattel Mortgage and in the notes themselves which are so at variance with a loan to be repaid only from specified sources and securities that the court should have found mutual mistake in the writing as executed and decreed reformation thereof from mere inspection of the documents.

Twelve or more instances said to support the contention are culled from the several documents and elaborated upon but we are not impressed. The evidence is that the plaintiff in advancing the war effort was authorized to and did make mining project loans where the borrowers obligated themselves personally to repay the loans, and it could and did make other loans where it was agreed that repayment was to be made only from specified sources and assets. There were many thousands of such transactions. But except as to differences in the laws of the several states the plaintiff's general indenture and mortgage form set forth the details of the plan under which both kinds of loans were made and secured and no change in the forms was required as to such general provisions whether the borrower obligated himself to repay the loan personally or only out of specified assets. The forms were prepared in contemplation that that feature of the contract should be fixed by addition or omission of comparatively few words in the forms. In both circumstances whether the borrower obligated himself to pay personally or did not do so, the execution and delivery of promissory notes was required of the borrower. Apparently the Reconstruction Finance Corporation in assimilating its business to banks prefers to keep a note case.

The particular forms that were filled out to be signed and to evidence the contract in this case had been used to evidence the contract on a prior loan transaction between plaintiff and borrower in which the borrower did not and was not expected to obligate itself personally to repay the notes which were required to be and were signed and delivered. That mutual intention of the parties was not shown to have been in any wise obscured by any of the general provisions of the forms. On careful scrutiny we find no provisions of the documents evidencing the contract here to be so incompatible or at variance with the provision that the loan should be repaid only out of specified assets as to justify reformation by a court of equity on that ground.

The decision of the 10th Circuit in Columbian National Life Insurance Co. v. Black, 35 F.2d 571, 71 A.L.R. 128, relied on by plaintiff, is distinguishable. There the purchaser of ordinary life insurance was given a policy on the form of ordinary life but by mistake cash surrender benefits applicable to endowment insurance were incorporated. Of course such endowment benefits were much more costly than the ordinary life insurance applied for and paid for by the insured. The mistake and the injustice of the policy holder's demand for endowment benefits he neither applied for nor paid for were apparent. It appeared to the court that the insurance company should not be mulcted nor the insured unjustly enriched by reason of the mistake.

702

■ But in this case the plaintiff had an interest to stimulate production of strategic and critical materials for national defense. The defendants invested large sums of money as well as valuable personal services in the project in furtherance of such production. The trial court's finding that the defendants executed the documents sought to be reformed "in good faith in reliance upon the terms and provisions thereof, as drafted" is supported by the evidence.

■ It is further contended that reformation ought to have been granted because the drawing of the contract so that the loan was to be repaid only out of specified assets was the action of a government agent and the cases are cited holding that the government is not bound by unauthorized action of officers or agents. But the doctrine is plainly without application. Here the Reconstruction Finance Corporation had authority to make the loan payable only out of certain assets, and as this court stated in England National Bank v. United States, 8 Cir., 282 F. 121, 127, quoting from Cooke v. United States, 91 U.S. 389, loc.cit. 398, 23 L.Ed. 237: " 'If it [the government] comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there. * * * Generally, in respect to all the commercial business of the government, if an officer specially charged with the performance of any duty, and authorized to represent the government in that behalf, neglects that duty, and loss ensues, the government must bear the consequences of his neglect.' "

That the Reconstruction Finance Corporation scrivener may have made a mistake does not afford a basis for reformation at the instance of the plaintiff.

■ There was no ground upon which the trial court would have been justified in reforming or rewriting the Indenture which, as recited on the face of the notes, described the property conveyed, the nature and extent of the security and the terms, conditions and covenants upon which the notes were issued, accepted and secured, and which prescribed the condition that the notes should be paid only from specified sources. The court was not in error in refusing reformation prayed for and in holding that the plaintiff was bound by the terms of the contract as it was written.

■ We have not failed to consider appellant's several contentions to the effect that the contract as it was written imposed personal obligation upon the defendants to repay the loan and required a money judgment against them as prayed, but none appears of sufficient merit to require discussion.

There is not the slightest ambiguity in each note's recitation that the terms and conditions on which it was issued and accepted are set forth in the Indenture pursuant to which it was issued, nor is there the slightest uncertainty about the referred to provision of the Indenture that each of the notes shall constitute a promise to make payment but only from specified sources. Those words "but only from specified sources" are apt and appropriate as any that can be thought of to negate personal liability for failure to pay and the evidence is clear that plaintiff adopted and used them to accomplish that purpose. Most certainly the defendants on reading them in the document the plaintiff presented to be signed had the right to believe that they meant what they plainly import. The conclusion of the trial court that the plaintiff was not entitled to recover a personal judgment against the defendants was without error.

The judgment of dismissal is affirmed.

On Motion for Rehearing.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

PER CURIAM.

This case is before us on a motion for rehearing on a decision of this court which affirmed a judgment of the district court denying reformation of an indenture or chattel mortgage securing 15 past due notes for $5,000 each, and denying also a personal

judgment against the appellees, signers of the notes. The facts and contentions of the parties are stated in the opinion of the court and will not be repeated.

On rehearing it is urged that this court erred in holding that the loan transaction involved constitutes a transaction in the domain of commerce and commercial business of the government and that the Reconstruction Finance Corporation is bound by the unauthorized act and clerical mistake of its employee and scrivener J. W. Mills. It is also urged that such holding is of such national importance that it should be corrected by this court.

Because of the declared importance of the case we have carefully reviewed the record, the briefs including the cited authorities, and the assailed opinion, and we have reached the conclusion that the motion for rehearing is without merit.

The rule that the government is not bound by an unauthorized act of its officers or agents has no application to the facts of this case. Here the Reconstruction Finance Corporation had authority to make two types of loans, one involving the personal liability of the borrower and another called a self-liquidating loan for which the borrower was not personally liable. The appellant contends that the intention of the officers of the Corporation was to make the loan to the appellees on a personal liability basis whereas appellees understood it to be a self-liquidating loan. The resolution of the Board of Directors granting the loan was referred to the legal department of the Reconstruction Finance Corporation. There the notes and indenture were drafted by J. W. Mills, one of its attorneys, who, it is claimed, made a mistake in drafting the instruments and drafted them for a self-liquidating loan instead of one creating a personal liability. Mills appeared at the trial, testified for the appellant, and assisted other attorneys in the trial of the case. The appellees, however, never saw nor had any communication with Mills prior to the trial.

That this is not a case where the appellees were transacting business with Mills as agent of the Reconstruction Finance Corporation is clear and undisputed. They dealt with no particular agent. The transaction was directly with the Corporation, for the most part by correspondence, in answering questions and in furnishing written data called for by the application and by request of officers of the Corporation.

■ The appellant insists, perhaps more clearly than it did on the submission of the appeal, that it has a right to recover on the promissory notes as absolute and unconditional promises to pay without reformation of the indenture. The basis of this contention is that the Reconstruction Finance Corporation is a public corporation discharging governmental functions and that such a corporation cannot be held responsible for the mistakes of its agents, whether such mistakes were mutual or unilateral. In substance this is a challenge to the jurisdiction of the court predicated upon immunity of the government and its agencies. Such immunity was waived in the Act of Congress creating the Reconstruction Finance Corporation, which provides: "It [R.F.C.] shall have power * * * to make contracts; * * * to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal; * * *." 15 U.S.C. § 603, 1946 Supp., 15 U.S.C.A. § 603(a).

■ The statute does not state expressly that a party against whom the Reconstruction Finance Corporation brings suit may appear and defend; but such right is implied. To hold otherwise would violate the due process clause of the 14th Amendment; for it would sanction the breaking of a contract by the Reconstruction Finance Corporation with a citizen and the taking of his property by aid of the court without a hearing. And since he may defend, the rules governing the trial and decision are the same as they would be in a case where both parties are private citizens. Keifer & Keifer v. R. F. C., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; F. H. A. v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724; R. F. C. v. Menihan Corp., et al., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595.

The motion for rehearing will accordingly be dismissed.