July 20, 1977

## 77–42   MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, ANTITRUST DIVISION

### Compensation of Court-Appointed Expert Witnesses (*United States* v. *R.J. Reynolds Tobacco Company*)

This is in response to your request for our opinion regarding the United States' obligation, if any, to compensate court-appointed expert witnesses.[1] A brief march through some of the history of the matter that raises the question should prove helpful.

In the pending case of *United States* v. *R.J. Reynolds Tobacco Co.,* the district court, pursuant to Rule 706 of the Federal Rules of Evidence, appointed an expert witness. Initially, the court ruled that the Government would pay 50 percent of the expert witness' compensation and the two defendants would pay 25 percent each, with a final allocation of cost to be made at the conclusion of the litigation. The Antitrust Division referred the order appointing the expert witness to this Office for review and advice. We advised that "the Order in the present case meets the formal requirements for application of Rule 706." However, it was concluded that the duties involved were not "substantially and essentially those of an expert witness" and that the "fees and expenses" of the witness "for the performance of his functions under the instant order [were] not properly chargeable to the parties under Rule 706."[2]

The court was informed of our opinion, whereupon the trial judge threatened dismissal if the Government did not agree to pay its share of

---

[1] It should be noted that Federal Rule of Civil Procedure 54(d), and 28 U.S.C. §§ 1821, 1920 and 2412 are peripherally raised in this matter. Rule 54(d) provides that costs against the United States shall be imposed only to the extent permitted by law. 28 U.S.C. § 2412 provides that the United States shall be liable for a judgment for costs as enumerated in 28 U.S.C. § 1920. The latter section does allow for fees of witnesses; however, 28 U.S.C. § 1821 seems to limit such fees to subsistence and mileage, and it makes no distinction between an expert witness and a regular witness. The courts have confirmed this interpretation. *See, e.g., Harrisburg Coalition Against Ruining the Environment* v. *Volpe,* 65 F.R.D. 608, 610 (D. Pa. 1974). Thus, if a court can require the United States to pay a share or all of a court-appointed expert witness' compensation, its power must be found in Rule 706.

[2] The doctrine of sovereign immunity was not raised in the Division's inquiry of last year or in our response thereto.

the expert witness' compensation. Apparently, this Office was informed of the court's position and, according to the Antitrust Division, orally authorized payment.[3]

The case has now reached the stage where final allocation of costs will be made, and the question asked is "whether the Division should invoke the doctrine of sovereign immunity either in an attempt to recover payments already made or to resist an anticipated attempt by the defendants to tax the cost of the court's expert witness completely to the United States." For the reasons set forth below, we conclude that the word "parties," as used in Rule 706, includes the United States.

The Federal Rules of Evidence are the culmination of many years of study, which began in 1961 with the appointment of an advisory committee to study the advisability and feasibility of uniform rules of evidence for use in the Federal courts. They became effective in June 1975, with their stated congressional purpose "to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."[4] Any construction that we give these Rules should attempt, if at all possible, to carry out the stated congressional purpose.[5]

It has been stated that Rule 706 recognizes the inherent power of a trial judge to appoint an expert of his own choosing.[6] That may be true, but an expert appointed pursuant to Rule 706 has characteristics uncommon to a court's expert; he is also an expert for the parties.[7] For example, the expert witness is required to advise the parties of his findings; he may be called to testify by the court or any party; and he is subject to cross-examination by each party, including a party calling him as a witness. Such an expert witness is, to all intents and purposes, an employee of the court, the plaintiff, and the defendant, and the compensation provision of Rule 706 recognizes this.

Subsection (b) provides that the court-appointed expert witness' compensation is to be:

> payable from funds which may be provided by law in criminal cases and civil actions and proceedings involving just compensation under the Fifth Amendment. In other civil actions and proceedings the compensation shall be paid by the parties in such

---

[3] Rather than authorizing payment, we took the position that our Office had given its legal advice and that the decision to pay was the Antitrust Division's to make.

[4] Rule 102.

[5] See, e.g., United Shoe Workers of American, AFL–CIO v. Bedell, 506 F. 2d 174, 187–188 (D.C. Cir. 1974); March v. United States, 506 F. 2d 1306, 1314 (D.C. Cir. 1974).

[6] The Advisory Committee's Note to Rule 706 cites Scott v. Spanjer Bros., Inc., 298 F. 2d 928 (2d Cir. 1962), and Danville Tobacco Assn. v. Bryant-Buckner Associates, Inc., 333 F. 2d 202 (4th Cir. 1964), to support the proposition that the trial judge has the inherent power to appoint his own expert witness.

[7] Rule 706 also permits the trial judge to request the parties to submit nominees and allows him to appoint any expert witnesses agreed upon by the parties.

proportion and at such time as the court directs, and thereafter charged in like manner as other costs.

Whether the United States can be charged the cost of a court-appointed expert witness in the latter class of actions, is the question we address.

As will be seen from the discussion that follows, the present matter does not fit smoothly into the kinds of legal disputes where the doctrine of sovereign immunity has traditionally been invoked. The doctrine is generally invoked to prevent private parties from using the judicial process to restrain the Government from acting, to compel it to act, or to collect monies from the public treasury. The doctrine is, in effect, a prohibition against private parties suing the United States without its consent. As matters now stand, that is not the posture of the present case.[8] In *Larson* v. *Domestic & Foreign Commerce Corp.*,[9] the Supreme Court articulated the doctrine's rationale. The Court stated:

> There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign. The Government, as representive of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right. As was early recognized, "the interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief . . . ."[10]

Thus developed the rule that generally a court cannot entertain an action against the United States without specific authority, and it is said that sovereign immunity must be expressly waived and that "[w]aiver by implication will not be endorsed."[11] This latter principle, however, has never been universally accepted. It is a presumptive axiom of declining followers rather than a rule of law.[12]

However, the doctrine of sovereign immunity, like its "associated doctrines," is not without exceptions.[13] In his article on sovereign immunity, Roger C. Cramton (formerly Assistant Attorney General, Office of Legal Counsel) notes that historically there have been many reasons advanced for the doctrine, but that "[t]he only rationale for the doctrine that is now regarded as respectable by courts and commenta-

---

[8] If in its final allocation of costs and expenses, the court requires the United States to pay part or all of the court-appointed expert witness' compensation and the United States refuses, it is possible that the expert witness may institute an action to compel the United States to pay.

[9] 337 U.S. 682 (1949).

[10] *Id.* at 704.

[11] *Vincenti* v. *United States,* 470 F. 2d 845, 848 (10th Cir. 1972).

[12] *See, Littell* v. *Morton,* 445 F. 2d 1207, 1213–14 (4th Cir. 1971); *Frederick* v. *United States,* 386 F. 2d 481, 488 (5th Cir. 1967); and cases cited in note 13, *infra.*

[13] *See, e.g., Larson* v. *Domestic & Foreign Commerce Corp.,* supra, note 9, 337 U.S. at 703–04; *Dugan* v. *Rank,* 372 U.S. 609, 621–622 (1963); *FHA* v. *Burr,* 309 U.S. 242, 245 (1940); *White* v. *Bloomberg,* 501 F. 2d 1379, 1385 (4th Cir. 1974); *Kletschka* v. *Driver,* 411 F. 2d 436, 445 (2nd Cir. 1969); *United States* v. *Moscow-Idaho Seed Co., Inc.,* 92 F. 2d 170, 173 (9th Cir. 1937).

tors alike is that official actions of the Government must be protected from undue judicial interference." [14] The doctrine, as one court so crisply pointed out, "is wearing thin," [15] and its protective walls were further eroded by the last Congress with the enactment of Public Law 94–574. [16] In sum, we think that as a general rule the doctrine of sovereign immunity is to be invoked where judicial proceedings will result in "substantial bothersome interference with the operation of government." [17]

Using the counsel of the Supreme Court in *Larson*, we do not believe that the established judicial reasons for invoking the doctrine are compelling in the instant matter. [18] The compensation of court-appointed expert witnesses certainly will not cause the Department of Justice to be "stopped in its tracks" in enforcing the antitrust laws. Indeed, the stated congressional purpose of the Federal Rules of Evidence is just the opposite. [19] However, our conclusion does not rest on that single foundation. In our opinion, even when the other accepted judicial reasons for invocation of the doctrine are tested against the instant matter, the result must be the same.

As noted earlier, there are exceptions to the doctrine. For example, it has been stated "that when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the Government's suit . . . ." [20] Given this judicial ruling and the fact that the doctrine is generally invoked to prevent a court from entertaining a case, [21] rather than from resolving an issue once the case is properly before the court, it would appear that invocation of the doctrine in the present matter is inappropriate. However, the axiom that once the Government sues it submits itself to "the nature and appropriate incidents of legal proceedings," has not been the only pronouncement. In *United States* v. *Chemical Foundation,* [22] the Court stated that "[t]he general rule is that, in absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses." [23] Thus, the case law seems to say that the mere fact that the

[14] Cramton, Nonstatutory Review of Federal Administrative Action: The Need for Statutory Reform of Sovereign Immunity, Subject Matter Jurisdiction, and Parties Defendant, 68 Mich. L. Rev. 389, 397 (1969–70).

[15] *Estrada* v. *Ahrens,* 296 F. 2d 690, 698 (5th Cir. 1961).

[16] This act makes it considerably easier for private parties to seek judicial review of Federal administrative agency actions.

[17] *Littell* v. *Morton, supra,* note 12, 445 F. 2d at 1214. *See also, Larson* v. *Domestic & Foreign Commerce Corp., supra,* note 9, 337 U.S. at 704.

[18] *Id.*

[19] *See* text, *supra,* at note 4.

[20] *Frederick* v. *United States, supra,* note 12.

[21] The case law suggests that the controlling principle behind this ancient doctrine is to prevent the courts from entertaining actions initially of the kind that would interfere with the Government's carrying out its ordinary duties of public administration, rather than to protect itself against rulings of the court once a case is properly before the court.

[22] 272 U.S. 1 (1926).

[23] *Id.* at 20.

Government has entered the courthouse and submitted to the court's jurisdiction, is not enough where costs or expenses are an issue; there must be a statute authorizing payment.

We think that Rule 706, on its face, clearly waives the presumption against the United States' suability and authorizes payment for the compensation of court-appointed expert witnesses. Indeed, any other interpretation would strike a crippling blow to this Rule. Fundamental to statutory construction is the principle that absent a contrary indication, words will be read according to their common usage. The word in question here is "parties." We should pause to note at this point that the terms "United States" and "Federal Government" are not used in Rule 706.

Subsection 706(b) establishes two categories of cases for determining how court-appointed expert witnesses are to be compensated. First, are expert witnesses appointed in criminal and condemnation cases, as to which compensation is "payable from funds which may be provided by law"? Although, the Federal Government is not mentioned by name, it is clear that the Government is to pay from appropriated funds[24] the entire cost of court-appointed expert witnesses in this class of cases.[25] In the very next sentence the second category is established by the language: "In other civil cases the compensation shall be paid by the parties in such proportion and at such time as the judge directs . . . ." We think that the term "parties" as used in the quoted language comports with common legal usage, and that common legal usage includes the United States.[26]

The matter we thresh out here is somewhat analogous to the legislative directive the court faced in *United States* v. *Friedman.*[27] In that case a bank sought reimbursement for the cost of complying with an Internal Revenue Service summons. The court stated:

> ‘We conclude that from the very fact that enforcement of a § 7602 summons is by § 7604(b) entrusted to the judiciary, this court has the power to fashion appropriate rules as to the fairness of the enforcement order. ° ° °. We conclude that the district court possessed the power to require the Government to reimburse the

---

[24] Within this first category are two means for paying court-appointed expert witnesses fees. In criminal cases, the expert witness is to be compensated from funds appropriated to the Administrative Office of the United States Courts for the expenses of maintenance of the courts. In condemnation cases the expert witnesses fees are to be paid from the general operating funds of the agency initiating and litigating the action.

[25] The Advisory Committee Note to Rule 706 states that: "The special provision for Fifth Amendment compensation cases is designed to guard against reducing constitutionally guaranteed just compensation by requiring the recipient to pay costs."

[26] *See* 18 U.S.C. §§ 203, 205, and 207, which identify the United States as a "party." It would appear that the United States is a party in more judicial proceedings than any other single party.

[27] 532 F. 2d 928 (3rd Cir. 1976).

bank for the reasonable cost of production of the requested bank records.[28]

So it is in the present matter; not only is it a clear implication from the statute that Congress intended the term "parties" to include the United States, but also that the establishment of the duties and responsibilities of court-appointed expert witnesses, the amount of compensation, and the proportions the parties are to pay such expert witnesses are matters entrusted to the judiciary.

Moreover, the cost attending a court-appointed expert witness cannot be compared to the situation where a party is attempting to have the cost of his own expert witness charged to the Government.[29] When a party selects his own expert witness, the attending cost is a result of independent action, whereas the cost resulting from a court-appointed expert witness, in the main, is occasioned by judicial action. In the latter situation, cost is more akin to a docket fee, fees of the clerk and marshal, or fees of the court reporter.[30] The effect of Rule 706 is to make the cost of court-appointed expert witnesses a necessary expense of litigation, an expense as to which sovereign immunity cannot serve as a protective shield.[31] In sum we think that compensation for a court-appointed expert witness is fundamentally different from payment to an opposing party for the expense of his own expert witness.[32] And we think Congress recognized this by requiring the United States to pay the entire cost for such expert witnesses in condemnation cases.[33]

One of the most salient reasons for enacting the Federal Rules of Evidence was to ensure that the judiciary shall function properly. As we noted earlier, if Rule 706 is construed as not requiring the Government to pay its fair share of the cost for court-appointed expert witnesses, it could frustrate the congressional purpose. It would undoubtedly discourage a trial judge from appointing an expert witness where the Government is a party. Courts are unlikely to embrace enthusiastically such an inequitable interpretation of the Rule. Indeed, in the present case the trial judge threatened to dismiss the action unless the Government agreed to pay its fair share.

We conclude that the doctrine of sovereign immunity cannot be invoked either to recover payments already made or to resist a defend-

---

[28] *Id.* at 937.

[29] Subsection (d) of Rule 706 states: "Nothing in this rule limits the parties in calling expert witnesses of their own selection."

[30] 28 U.S.C. §§ 1920 and 2412 allow judgments for costs against the United States for docket fees, fees of the clerk and marshal, and fees of the court reporter.

[31] In *United States* v. *Ringgold,* 8 Peters 150, 162 (1834), the Court stated "that no court can give a direct judgment against the United States for costs, in a suit to which they are a party, either on behalf of any suitor, or any officer of the government. *But it by no means follows from this, that they . . . are not liable for their own costs.*" [Emphasis added.]

[32] *See, e.g., Sperry Rand Corporation* v. *A-T-O, Inc.,* 58 F.R.D. 132, 137 (D.Va., 1973).

[33] The United States is not required to compensate an expert witness of the landowner's own choosing. This was also the law prior to Rule 706. *See, e.g., United States* v. *Easement and Right-of-Way,* 452 F. 2d 729 (6th Cir. 1971).

ant's attempts to charge the cost of the expert witness completely to the United States on the basis of sovereign immunity. We think the law, public policy, and fundamental fairness, as well as logic, dictate this conclusion. To say that this is a proper case to invoke the doctrine of sovereign immunity would be to allow legal gymnastics to triumph over the congressional purpose of the Federal Rules of Evidence.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*