May 22, 1979

### 79-36 MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CIVIL DIVISION

### Arbitration—Export-Import Bank—Sovereign Immunity—Representation of Bank by Department of Justice

This responds to your request for our opinion whether arbitration of a contract claim by a private commercial bank against the Export-Import Bank (hereinafter "Eximbank") is authorized by law and, if so, whether this Department is authorized to represent Eximbank before the arbitral tribunal.

We understand the facts to be as follows: Eximbank agreed with the First National Bank of Oregon (FNBO) to guarantee FNBO loans financing certain exports. The master guarantee agreement included a clause providing that disputes under the agreement "would be settled by arbitration in accordance with the Rules of the American Arbitration Association," and that any arbitration award may be judicially enforced. The FNBO has demanded arbitration of its claim of $976,514.23.

#### Eximbank's Authority to Arbitrate

The issue is whether the claim is one against the United States and, if so, whether the United States has waived its sovereign immunity in a way, that permits arbitration.

For the purpose of sovereign immunity, FNBO's claim against Eximbank is one against the United States. Under 12 U.S.C. § 635, Eximbank is a wholly owned Government corporation and an agency of the United States. The Bank concededly has authority under 12 U.S.C. § 635(a) to guarantee loans it has made. The Attorneys General have repeatedly ruled that a guaranty by a Government corporation contracted within its statutory powers is a general obligation of the United States, payable from the Treasury as well as from the corporation's assets. 42 Op. Att'y Gen. 429 (1971); *id.,* 327 (1966); *cf., id.,* 21 (1961); 41 Op. Att'y Gen. 365

(1958); *id.*, 403 (1959). Accordingly, claims arising under such guarantees are contract claims against the United States to which sovereign immunity applies unless waived. *See generally, FHA* v. *Burr,* 309 U.S. 242 (1940); *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U.S. 381 (1939); *Federal Land Bank* v. *Priddy,* 295 U.S. 229 (1935).

It is well settled that the immunity of the United States from suit on monetary claims may only be waived by statute. *See, e.g., Affiliated Ute Citizens* v. *United States,* 406 U.S. 128 (1972); *United States* v. *Shaw,* 309 U.S. 495 (1940). No Executive officer may waive sovereign immunity without statutory authority. *See, e.g., United States* v. *United States Fidelity & Guaranty Co.,* 309 U.S. 506 (1940). Whether Eximbank could lawfully consent to have claims against it resolved by an award of an arbitral tribunal is thus a question of statutory construction.

Eximbank's powers in this area are derived from 12 U.S.C. § 635(a)(1), providing in pertinent part as follows:

(1) There is created a corporation with the name Export-Import Bank of the United States, which shall be an agency of the United States of America. The objects and purposes of the bank shall be to aid in financing and to facilitate exports and imports and the exchange of commodities between the United States or any of its Territories or insular possessions and any foreign country or the agencies or nationals thereof. In connection with and in furtherance of its objects and purposes, the bank is authorized and empowered to do a general banking business * * * to guarantee notes, drafts, checks, bills of exchange, acceptances, including bankers' acceptances, cable transfers, and other evidences of indebtedness; to guarantee, insure, coinsure, and reinsure against political and credit risks of loss * * * to sue and to be sued, to complain and to defend in any court of competent jurisdiction; to represent itself or to contract for representation in all legal and arbitral proceedings outside the United States; and the enumeration of the foregoing powers shall not be deemed to exclude other powers necessary to the achievement of the objects and purposes of the bank * * *.

This provision has an unusual history. According to the historical and revision note in the United States Code, the Bank was chartered as a District of Columbia banking corporation by Executive order and in 1935 made an agency of the United States by statute. Its status as a Government corporation was conferred by the enactment of the present version of 12 U.S.C. § 635(a) in 1947.[1] That statute also added the "sue and be sued" phrase. Its legislative history states that the purpose was to continue unimpaired

---

[1] *See* Act of June 9, 1947, ch. 101, § 1, 61 Stat. 130.

Eximbank's powers as a District of Columbia banking corporation while making express its previously implicit power to sue and to be sued.[2]

We know of no direct authority dealing with the question whether a wholly owned Government corporation with Eximbank's powers may resolve contract claims by arbitration. It is our opinion, however, that 12 U.S.C. § 635(a)(1) authorizes the Bank to do so. First, the statute is a grant of power to engage in the business of banking in essentially the same manner as a private corporation;[3] it states that it is to be construed in a manner that will not exclude the powers necessary to achieve the Bank's function, and its legislative history indicates that the Bank retained the powers of a District of Columbia banking corporation. Second, the National Railroad Passenger Corporation (Amtrak), a wholly owned Government corporation with statutory powers similar to Eximbank's,[4] has employed arbitration of contract claims connected with its functions. *See, National Railroad Passenger Corp.* v. *Chesapeake & Ohio Rwy.,* 551 F. (2d) 136 (7th Cir. 1977). Finally, the Supreme Court has stated as a general rule of construction that where Congress has authorized a corporate instrumentality to engage in commercial transactions, statutory authority to "sue and be sued" should be construed as a complete waiver of sovereign immunity for any suit not clearly shown to be inconsistent with the instrumentality's function. "In the absence of such showing," the Court stated, "it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." *FHA* v. *Burr,* 309 U.S. 242, 245 (1940); accord, *Reconstruction Finance Corp.* v. *Menihan Corp.,* 312 U.S. 81 (1941); *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U.S. 381 (1939).

Presumably, a banking corporation in the District of Columbia would be free to submit contract claims arising from its banking operations to arbitration. Eximbank was intended to have similar powers and the agreement in this case has clearly arisen out of its normal banking operations. We are aware of no reason why arbitration would be inconsistent with Eximbank's functions. Accordingly, when 12 U.S.C. § 635(a)(1) is read in the light of *Burr,* it is our opinion that the statute authorized Eximbank to enter into the arbitration agreement.

We must point out, however, that this opinion is primarily a construction of Eximbank's statutory authority. As your opinion request states, the judicial authorities and opinions of the Attorney General do not agree

---

[2] *See* H. Rept. 393, 80th Cong., 1st sess., at 2 (1947); S. Rept. 104, 80th Cong., 1st sess., at 2 (1947).

[3] Eximbank is, of course, subject to the budgetary and auditing controls imposed on wholly owned Government corporations by the Government Corporation Control Act. 31 U.S.C. §§ 846–852.

[4] *See* 45 U.S.C. §§ 545(a), 562(a).

on the circumstances in which an agency of the United States may submit claims against it to arbitration.[5] In addition, the Comptroller General has held that clear statutory authority is required to arbitrate contract claims against the United States.[6] The power of each Government agency or instrumentality to submit a claim to arbitration must be considered on the facts of the particular case.

## Participation by the Department of Justice

In a memorandum of December 20, 1977 to the Associate Attorney General, we expressed the opinion that 28 U.S.C. §§ 516, 519 required the Department of Justice to conduct the litigation of Eximbank within the United States. Your second question is thus whether this extends to arbitration proceedings. We conclude that the Department is authorized by the above statutes and 28 U.S.C. § 517 to represent Eximbank in any arbitration involving FNBO.

Section 517 reads as follows:

> The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.

An arbitration proceeding is not, strictly, a suit pending in any court. However, any arbitration award against Eximbank would be judicially enforceable. *See generally, FHA* v. *Burr,* 309 U.S. 242 (1941). As you have pointed out, the award is ultimately payable by the United States. By representing the Bank in the arbitration, the Department will therefore be acting to protect a direct financial interest of the United States. Moreover, taking part in the arbitration may be crucial in protecting that interest. Although we have not considered the matter in detail, we note that judicial review of arbitration awards for errors of law, fact, or interpretation of the contract is extremely narrow. *See, e.g., National Railroad Passenger Corp.* v. *Chesapeake & Ohio Rwy.,* 551 F. (2d) 136, 141–44 (7th Cir. 1977); *see also* 9 U.S.C. §§ 10–11. In order effectively to represent Eximbank in court, it may be necessary for this Department to take part in the prelitigation proceedings that will essentially decide the controversy. We

---

[5] *Compare, George J. Grant Construction Co.* v. *United States,* 109 F. Supp. 245 (Ct. Cl. 1953), and *United States* v. *Ames,* 24 Fed. Cas. No. 14,441 (C.C. Mass. 1845); 33 Op. Att'y Gen. 160 (1922); 17 Op. Att'y Gen. 486 (1882).

[6] *See* 32 Comp. Gen. 333 (1953); 19 Comp. Gen. 700 (1940); 8 Comp. Gen. 96 (1928).

therefore conclude that 28 U.S.C. §§ 516–17, 519 authorize the Department to represent Eximbank in the arbitral proceeding.[7]

MARY C. LAWTON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[7] This opinion does not consider the question whether or to what extent Eximbank is required to be represented by this Department in an arbitration.