In the Matter of MANSION HOUSE CENTER SOUTH REDEVELOPMENT COMPANY, a limited partnership, Debtor.

In the Matter of MANSION HOUSE CENTER NORTH REDEVELOPMENT COMPANY, a limited partnership, Debtor.

In the Matter of MANSION HOUSE CENTER REDEVELOPMENT COMPANY, a limited partnership, Debtor.

Bankruptcy No. 80–61C(2).

United States District Court,
E. D. Missouri, E. D.

July 31, 1980.

Gerald A. Rimmel, Receiver, St. Louis, Mo., James Gunn, St. Louis, Mo., for debtors.

Donald F. Flint, Area Counsel, Dept. of Housing & Urban Development, St. Louis, Mo., J. Christopher Kohn, Atty., Civil Division, Dept. of Justice, Washington, D. C., for HUD.

Gene M. Zafft, St. Louis, Mo., Joseph B. Moore, Asst. U. S. Atty., Dept. of Justice, St. Louis, Mo., for United States.

## MEMORANDUM

JOHN F. NANGLE, District Judge.

This case in now before the Court for review of the Bankruptcy Court's[1] decision below, as well as review of the Bankruptcy Court's subsequent stay of the effect of its decision pending appeal. On July 11, 1979, petitions were filed under Chapter XII of the Bankruptcy Act by three limited partnerships. Each partnership claims an ownership interest in a separate twenty-eight story building. The three buildings together constitute the Mansion House Center.

The complex was originally built with the proceeds of loans extended by John Hancock Mutual Life Insurance Company and Mellon National Bank and Trust Company. These loans were insured pursuant to Section 220 of the National Housing Act, 12 U.S.C. § 1715k, by the Secretary of Housing and Urban Development ("HUD"). In early 1972, the mortgages were in default and the mortgages were assigned by the institutional lenders to HUD.

Since that time, extensive litigation has ensued. It is unnecessary to the decision of this appeal to recite the lengthy history of the previous litigation. Suffice it to say that debtors herein have been found to be the owners of the properties in question, *United States v. Mansion House Center*, 463 F.Supp. 591 (E.D.Mo. 1978), aff'd 605 F.2d 1090 (8th Cir. 1979), cert. denied 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980), and are entitled to possession of the respective properties upon dissolution of the receivership previously imposed by this Court.

*United States v. Mansion House Center*, 419 F.Supp. 85 (E.D.Mo. 1976).

At present, HUD is seeking to foreclose on the mortgages which it now holds. Foreclosure actions were filed by the United States on behalf of HUD shortly prior to the filing of the instant petitions. These actions were automatically stayed by the filing of the Chapter XII petitions. See Rule 12–43, Rules of Bankruptcy Procedure.

The primary issue in this appeal is the effect on these proceedings of Section 517 of the Bankruptcy Act, 11 U.S.C. § 917. That section reads as follows:

Nothing contained in this chapter (Chapter XII) shall be deemed to affect or to apply to the creditors of any debtor under a mortgage insured pursuant to the National Housing Act and Acts amendatory thereof and supplementary thereto; nor shall its provisions be deemed to allow extension or impairment of any secured obligation held by Home Owners' Loan Corporation or by any Federal Home Loan Bank or member thereof.

The Bankruptcy Court therefore dismissed the instant petitions due to lack of jurisdiction. The debtors appeal herein from that dismissal. Subsequently, the Bankruptcy Court stayed the effect of this dismissal pending the completion of all appeals therefrom. This stay was occasioned principally by a desire to prevent the United States from proceeding with its pending foreclosure actions. The government appeals from this stay.

The debtors' initial contention is that Section 517 is not applicable to the mortgages held by HUD, since they are no longer "insured". Debtors contend that Section 517 applies only while the mortgages are in the hands of the insured mortgagees and the insurance thereon still outstanding.

This contention has been rejected by the majority of courts which have been faced with it. *United States v. Bristol Hills Apartments*, 461 F.Supp. 1179 (E.D.Mich. 1978); *In re Thornhill Way I*, No. 77 B 3676

[1]. The Honorable John J. Shanahan, Bankruptcy Judge.

(N.D.Ill.Bankr.Ct. January 19, 1978), aff'd No. 77 B 3676 (N.D.Ill. December 19, 1979); *In re Circle Properties*, No. 74–333 B (4–c) (E.D.Mo. March 15, 1974); *In re Ventura Towne House, Inc.*, No. Bk 74–17030–WPG (C.D.Cal. July 20, 1976). Cf. *In re Preston Tower Joint Venture*, No. 76 B 902 (N.D.Ill. Bankr.Ct. April 15, 1976); *In re Oklahoma Apts. Associates*, No. 78 B 5160 (N.D.Ill. Bankr.Ct. February 28, 1979). Indeed, this Court, and the Eighth Circuit Court of Appeals in affirming this Court, have indicated in dicta that a bankruptcy proceeding concerning the Mansion House Center was precluded by Section 517. *United States v. Mansion House Center*, No. 76–20 C (3) (E.D.Mo. March 10, 1977), slip op. at 10–11; *United States v. Mansion House Center*, 594 F.2d 653 at 656 n.5 (8th Cir. 1979), cert. denied 44 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 45 (1979).

■ Against this strong weight of authority debtors have made vigorous and lengthy arguments. This Court must reject these arguments, however, and affirm the conclusion of the Bankruptcy Court that Section 517 covers the mortgages involved in this case.

First of all, this Court can not assign great weight to the decision of the Bankruptcy Court for the Northern District of Illinois in *In re Oklahoma Apts. Associates*, supra, as debtors urge. That decision, as well as the decision in *In re Preston Tower Joint Venture*, supra, was effectively overruled by the subsequent decision of the District Court for the Northern District of Illinois in *In re Thornhill Way I*, supra. That decision recognized the split of authority on the issue at hand, and declined to follow the decision in *Oklahoma Apts*. This Court recognizes, however, that the applicability of Section 517 to HUD-held mortgages has never been squarely presented to an appellate court. For that reason, the issue has been very carefully considered.

■ The starting point in the interpretation of any statute must be the language of the statute itself. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). This Court does not view as relevant what could have been said in order to make a desired result more clear. Both sides to this appeal have presented such alternate language, and the arguments essentially cancel themselves out. What is important is what *was* said, not what could have been said.

The relevant portion of Section 517 states:

Nothing contained in this chapter shall be deemed to affect or apply to the creditors of any debtor under a mortgage insured pursuant to the National Housing Act . . . . .

This section, though not long or complicated, is admittedly not a model of clarity. HUD, at this time, is clearly a creditor of the debtors. Likewise, it is clearly a creditor under a mortgage which was originally insured pursuant to the National Housing Act. The question is whether the language of the statute, "under a mortgage insured," limits the section's applicability to the period when the insurance is still outstanding. This Court must conclude that is does not.

■ In interpreting the language of a statute, it is relevant to consider the language of related statutes. *United States v. American Building Maintenance Indus.*, 422 U.S. 271, 277, 95 S.Ct. 2150, 2154, 45 L.Ed.2d 177 (1975). The insurance provisions of the National Housing Act, to which reference is made in Section 517, are contained in 12 U.S.C. § 1707 et seq. The statutes set up a system whereby HUD insures mortgages extended by private lenders. Upon default by the borrower under the mortgage, the mortgagee has two options: it may foreclose and turn over the property to HUD in return for the insurance benefits, or it may assign the mortgage to HUD in return for the benefits. Section 1713(k) details the rights and responsibilities of HUD after assignment of the mortgage under the second option. The language of this subsection shows that a mortgage is still referred to in the statutes as a "mortgage insured" after termination of the insurance.

This subsection states, in part, as follows:

(k) The Secretary is authorized either to (1) acquire possession of and title to any property, *covered by a mortgage insured* under this section and assigned to him, by voluntary conveyance in extinguishment of the mortgage indebtedness, or (2) institute proceedings for foreclosure on the property *covered by any such insured mortgage* and prosecute such proceedings to conclusion. (emphasis added).

This section clearly refers to a mortgage after assignment to the Secretary and payment to the mortgagees of the insurance proceeds as a "mortgage insured" and an "insured mortgage". To the same effect is 12 U.S.C. § 1715k(f)(3). The use of this language in these sections to refer to mortgages after assignment to HUD strongly implies that its use should not be unnecessarily limited in Section 517.

Furthermore, § 1713(k) goes on to state that, pending acquisition by voluntary conveyance or foreclosure, the Secretary is authorized "to exercise all rights of a mortgagee under such mortgage." 12 U.S.C. § 1733, in turn, refers to subsection (n) of section 207 of Title 11, the predecessor to Section 517, as establishing rights under the mortgage. These two sections, when read together, bolster the conclusion that Section 517 is meant to apply even after assignment of the mortgage to HUD.

Also relevant is the recent Congressional statement as to its understanding of Section 517. *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 380–381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). The new Bankruptcy Act contains no provision comparable to Section 517. Rather, the only protection afforded the Secretary is that the commencement of an action to foreclose a mortgage insured or formerly insured under the National Housing Act is not stayed by the filing of a petition. Proceedings after commencement of such an action are stayed. The legislative history accompanying this act shows Congress' understanding that this exception is much more limited than Section 517. Senate Report No. 95–989, 95th Cong., 2d Sess. 52 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5838.

Debtors have presented no arguments sufficient to negate the decision dictated by the prior case law, other related statutes, and Congressional interpretations. Debtors first argue that the purpose of Section 517, as shown by the legislative history of its predecessor, is to promote private investment and private participation in the Housing Act. According to debtors, extension of the protection of Section 517 to the Secretary is unnecessary to achieve this legislative objective.

It can not be doubted that one of the objectives of § 77B(n), the predecessor of Section 517, was to encourage private participation in the insurance programs of the Housing Act. At the time of the enactment of this section, mortgagees had only one option upon default—they had to foreclose and turn the property over to the Secretary within one year of default. The present option of assigning the mortgage to the Secretary was not then available. Debtors could prevent the foreclosure, however, by petitioning for an arrangement under Section 77B. The insurance protection was therefore worth little. Section 77B(n) was enacted to ensure that the mortgagees would be able to foreclose.

There is evidence, however, that this was not the only purpose behind the present Section 517. In the legislative hearings prior to the adoption of Section 77B(n), the Assistant General Counsel of the Federal Housing Administration, the predecessor of HUD, testified as to the FHA's belief that low-cost housing corporations should not come within the purview of the Bankruptcy Act. This view was due to the pervasive regulation and control exercised by the FHA over these corporations, which evidenced the public purposes which they served, *Proposed Amendment to an Act to Establish a Uniform System of Bankruptcy Throughout the United States, Approved July 1, 1898, and Acts Amendatory Thereof and Supplementary Thereto: Hearing on S. 3058 Before a Subcomm. of the Senate Committee on the Judiciary*, 74th Cong., 1st Sess. 4, 5 (1935), and the unsuitability of bankruptcy proceedings. The pervasive

regulation and control of the Mansion House Center by HUD is similar to that of the low-cost housing corporation. Exemption from the provisions of the Bankruptcy Act on this ground is not unusual. See, for example, Section 4(a) of the Bankruptcy Act; *Highway & City Freight Drivers, Etc. v. Gordon*, 576 F.2d 1285, 1289 n.6 (8th Cir. 1978).

Secondly, the Bankruptcy Act was amended and recodified in 1938, and Section 77B(n) was included in both Chapters X and XII as Sections 263 and 517. A few months prior to this recodification, however, the National Housing Act was also amended such that mortgagees then had the option of assigning the mortgage to HUD prior to foreclosure. At the time of the recodification of the Bankruptcy Act, therefore, it was possible for the mortgagee to assign the mortgage to the Secretary. If the only purpose of Section 77B(n) was to afford protection to the private mortgagee, the section was no longer necessary. Although the timing of the legislative actions is not necessarily conclusive as to Congress' intent to include mortgages after assignment, cf. *Shopmen's Loc. U. No. 455, Etc. v. Kevin Steel Prod., Inc.*, 519 F.2d 698, 705 (2d Cir. 1975), as argued by the government, it at least casts doubts upon debtors' assertions that the *only* purpose of Section 517 was to protect private mortgagees.

Debtors also argue, relying on Section 455 of the Bankruptcy Act, 11 U.S.C. § 855 and *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed. 711 (1979), that HUD is to be treated just as any other commercial lender and not afforded any special protection. Section 455 states generally that Chapter XII is to apply to debts of the United States. *Kimbell Foods, Inc.*, id., held that federal liens are not to automatically be given precedence over others determining priorities. This Court finds neither of these authorities conclusive in the present case.

*Kimbell Foods, Inc.*, id. dealt specifically with the situation when there is no federal statute setting priorities. This decision is therefore of minimal assistance in determining whether Section 517 is such a statute.

Likewise, the general principle announced in Section 455 is clearly subject to specific exceptions set out in other statutes. The second clause of Section 517 makes such an exception, and debtors make no argument that the general language of Section 455 should control over this specific exception. In determining whether the first clause of Section 517 also creates an exception, therefore, the general principle of Section 455 is only that—a general principle. If Section 517 creates an exception, Section 455 is inapplicable; if Section 517 does not create an exception, Section 455 takes effect. In either event, it is the language of Section 517 which controls, not Section 455.

This Court must therefore agree with the Bankruptcy Court that Section 517 is applicable in the instant case. The Bankruptcy Court then concluded that, since Section 517 was applicable, it lacked jurisdiction. Debtors argue that Section 517 does no more than create rights enforceable by HUD, which rights are subject to equitable estoppel. This Court must agree with the Bankruptcy Court.

The decisions dealing with Section 517 and its Chapter X counterpart, Section 263, have consistently referred to them as jurisdictional. *Bristol Hills Apts.*, supra; *In re Thornhill Way I*, supra; *In re Circle Properties*, supra; *Oklahoma Apts. Associates*, supra; *Monte Vista Lodge v. Guardian Life Ins. Co. of America*, 384 F.2d 126 (9th Cir. 1967), cert. denied, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142 (1968). Section 517 specifically states that the provisions of Chapter XII shall not be deemed to apply to or to affect any creditor under a mortgage insured pursuant to the National Housing Act. Having determined that this Section applies to HUD, it is difficult to imagine how the Chapter XII petition can be entertained without affecting HUD. The jurisdictional inquiry is whether the court has the power to act. *In re Bergman*, 585 F.2d 1171, 1178 (2d Cir. 1978). In this situation, the bankruptcy court does not have any such power, since it lacks the power to do anything which would affect HUD.

The general jurisdictional provisions of the Bankruptcy Act do not counsel a different result. Section 411, the jurisdictional provision of Chapter XII, begins with the phrase "where not inconsistent with the provisions of this chapter." To entertain jurisdiction pursuant to Section 411 would be inconsistent with Section 517.

■■■■■■ This Court therefore agrees with the Bankruptcy Court that since the primary purpose of a Chapter XII real property arrangement is the modification or alteration of the rights of real property mortgagees, and the primary mortgagee in this case, HUD, may not be affected in any way by such an arrangement, the petitions must be dismissed. Likewise, Section 517, being jurisdictional, may not be waived due to debtors' allegations of improper conduct on the part of HUD. *Mahoney v. Northwestern Bell Telephone*, 377 F.2d 549 (8th Cir. 1967). Jurisdiction may not be acquired by estoppel. Id.

Due to the above conclusions, this Court will not reach the government's contentions that these petitions should be dismissed for the additional reasons that they were not brought in good faith and that the government, as sole secured creditor of at least two of the properties, has stated in advance its unwillingness to agree to any plan.

The final issue before this Court is whether to continue the stay entered by the Bankruptcy Court. The government initially argues that the Bankruptcy Court lacked jurisdiction to stay the United States due to the doctrine of sovereign immunity.

Before dealing with this issue, it may be helpful to reiterate the posture in which this stay arose. The Bankruptcy Court dismissed the instant petitions due to lack of jurisdiction. This appeal followed. This appeal, and any that may subsequently follow, are merely extensions of the Bankruptcy Court's undoubted jurisdiction to decide its own jurisdiction. *Monte Vista Lodge*, supra; *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326 (9th Cir. 1978); *United States v. Mansion House Center N. Redev.*, 594 F.2d 653 (8th Cir. 1979). The Bankruptcy Court's conclusion, and this

Court's agreement, that Section 517 bars the instant petitions is therefore irrelevant. What is involved is *not* the primary issue of whether the Bankruptcy Court actually has jurisdiction over the petitions, but rather the issue is what power does that court have in exercising its clear authority to decide the jurisdictional issue.

■■■ With this in mind, it can be seen that the government's arguments that Section 517 bars the stay miss the point. The issue is whether, disregarding the effect of Section 517, a bankruptcy court has the authority to stay the United States or HUD while the jurisdictional issues are decided. Such authority exists only if the United States or HUD, whichever is the real party in interest, has consented to be sued. This Court must conclude that the Bankruptcy Court below possessed such authority. The obviousness of this result can be seen by an examination of the consequences of holding otherwise.

Were the stay in this case lifted, the United States would immediately proceed with its foreclosure actions. A ruling upon review in favor of the debtors on the Section 517 issue would be rendered meaningless if the foreclosure actions were already completed. Assuming the Section 517 issue to be ultimately decided in debtors' favor, the government would have been able to escape the effects of that decision merely by foreclosing while the issue was being litigated. With the stakes as high as they are in this case, the status quo must be maintained until the jurisdictional issue is ultimately decided.

The case law fully supports this conclusion. 12 U.S.C. § 1702 allows HUD to sue and be sued in connection with the carrying out of the National Housing Act. This section waives any sovereign immunity HUD may have enjoyed. *Federal Housing Administration v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). This section also grants jurisdiction to the courts to enjoin HUD when necessary and appropriate. Id., *United States v. American National Bank, Etc.*, 443 F.Supp. 167 (N.D.Ill. 1977);

*United States v. Park Side Court, Inc.*, 257 F.Supp. 177 (D.N.J. 1966); *In re Townsend*, 348 F.Supp. 1284 (W.D.Mo. 1972).

Even if, as the government argues, the party enjoined was the United States, and not HUD, *United States v. Waylyn Corp.*, 130 F.Supp. 783 (D.P.R. 1955), aff'd 231 F.2d 544 (1st Cir.), cert. denied 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49 (1956), the result is the same. Section 455 of the Bankruptcy Act provides that the United States may be affected by an arrangement. This section waives the sovereign immunity of the United States in this bankruptcy proceeding. *In re Delta Food Processing Corporation*, 446 F.2d 437 (5th Cir. 1971). This Court must therefore conclude that the Bankruptcy Court possessed the authority to issue the stay in this case.

■ Finally, the government argues that the Bankruptcy Court abused its discretion in granting the stay. This Court must agree. Traditionally, the test in this Circuit as to the propriety of granting a stay pending appeal has involved four factors:

(1) a strong showing that he is likely to succeed on the merits of the appeal; (2) a showing that, unless a stay is granted, he will suffer irreparable injury; (3) a showing that no substantial harm will come to other interested parties; and (4) a showing that a stay will do no harm to the public interest.

*Reserve Mining Co. v. United States*, 498 F.2d 1073 (8th Cir. 1974); *Ahrens v. Thomas*, 434 F.Supp. 873, 907 (W.D.Mo. 1977). This test is quite similar to that used in determining the appropriateness of a preliminary injunction. *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204 (8th Cir. 1976); *Washington Metropolitan Area, Etc. v. Holiday Tours*, 559 F.2d 841, 842 n.1 (D.C.Cir. 1977). Cf. *Blackwelder Furn. Co., Etc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir. 1977).

The test as to the appropriateness of a preliminary injunction has recently changed in this Circuit. Among the available tests is one which requires only a showing that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and that the balance of hardships tips decidedly toward the party requesting the injunction. *Chromalloy American Corp. v. Sun Chemical Corp.*, 611 F.2d 240 (8th Cir. 1979). Debtors urge that this looser test is also to be applied in ruling on the stay request in this case. As this Court believes that even this looser test was not met in this case, it will be applied.

Undoubtedly, there are sufficiently serious questions going to the merits to make them a fair ground for litigation. Though this Court affirmed the decision of the Bankruptcy Court, that decision was not an easy one, as the length of this opinion testifies. Furthermore, the points raised by debtors have never been squarely presented to an appellate court.

This Court does not believe the balance of hardships tips decidedly in debtors' favor, however. The primary point raised by debtors is the severe consequences of foreclosure. The possibility of foreclosure during the pendency of appeals, though hypothetically possible, is realistically remote. The foreclosure actions filed by the government are presently pending before this Court. Those cases are in infancy, and resolution is a long way off. Should it ultimately appear that foreclosure is imminent prior to resolution of any subsequent appeals, appropriate requests would be entertained by this Court.

Any costs associated with proceeding with the foreclosure actions do not present a great hardship to debtors. The mere cost of proceeding with litigation is not a sufficient hardship to justify a stay. *Mesabi Iron Company v. Reserve Mining Company*, 268 F.2d 782 (8th Cir. 1959); cf. *Ben Gutman Truck Serv. v. Teamsters Local No. 600*, 484 F.Supp. 893 (E.D.Mo. 1980). Also, the discovery undertaken in the foreclosure actions may prove useful in the various related actions, and those efforts would therefore not be wasted.

This Court should only reverse the Bankruptcy Court's granting of the stay if the

decision below was an abuse of discretion or based on an erroneous legal premise. *Chromalloy American Corp.*, supra. In the unique circumstances of this case, however, that decision must be reversed even though characterizing the decision as an "abuse of discretion" may be unduly harsh. The Bankruptcy Court based its decision on the severe consequences of foreclosure. Due to this Court's control over the foreclosure actions, however, it can be stated with certainty that foreclosure is unlikely during the pendency of appeals from the decision below. The decision below therefore loses its basis. That decision will be reversed.