661 F.2d 724
 8 Bankr.Ct.Dec. 345
 In re MANSION HOUSE CENTER SOUTH REDEVELOPMENT COMPANY,
Mansion House Center North Redevelopment Company,
and Mansion House Center Redevelopment
Company, Appellants.
 No. 80-1907.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 17, 1981.
Decided Oct. 27, 1981.
 
 Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Robert D. Kingsland, U. S. Atty., St. Louis, Mo., David Epstein, J. Christopher Kohn (argued), Attys., Dept. of Justice, Washington, D. C., for appellee.
 James F. Gunn, Gunn & Gunn, St. Louis, Mo., for appellants; Norman S. Altman (argued), Krooth & Altman, Washington, D. C., Richard Lieb, Kronish, Lieb, Shainswit Weiner & Hellman, New York City, of counsel.
 Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Section 517 of the Bankruptcy Act of 1938, codified until 1978 as 11 U.S.C. § 917,[1] provides as follows:Nothing contained in this chapter[2] shall be deemed to affect or apply to the creditors of any debtor under a mortgage insured pursuant to the National Housing Act and Acts amendatory thereof and supplementary thereto; nor shall its provisions be deemed to allow extension or impairment of any secured obligation held by Home Owners' Loan Corporation or by any Federal Home Loan Bank or member thereof.
 
 
 2
 The appellants, as petitioning debtors, commenced a proceeding for a real-property arrangement under the chapter (XII) which contains this provision. Appellants' land is encumbered by a mortgage held by the appellee United States, which had previously instituted suit to foreclose the mortgage. The mortgage, before its assignment to the United States, had been held by private lenders who had advanced funds to the former owners of the land, the petitioning debtors' predecessors in title. The mortgage had been insured by the Department of Housing and Urban Development under Section 220 of the National Housing Act, 12 U.S.C. § 1715k, having to do with urban redevelopment. It is undisputed that Section 517 of the Bankruptcy Act, quoted above, would not have prevented the private lenders from foreclosing the insured mortgage. (Chapter XII proceedings generally operate as an automatic stay of such creditors' remedies.) But in this case the mortgage had been assigned to the United States, acting through the insuring agency, the Department of Housing and Urban Development. The insurance had therefore determined, in the sense that the insured private lenders had been paid off, and premiums were no longer being paid. The question presented in this case is whether a mortgage that has been thus assigned to the United States is still a "mortgage insured pursuant to the National Housing Act" within the meaning of Section 517. If it is, the foreclosure suit may proceed, and Chapter XII is no obstacle. The District Court[3] held for the United States that the mortgage remains a "mortgage insured" for Section 517 purposes. We agree and affirm.
 
 I.
 
 3
 We have little to add to the clear discussion of the controlling issue in the District Court's opinion, and the reader is invited to refer to it for a full analysis. See In re Mansion House Center South Redevelopment Co., 5 B.R. 826 (E.D.Mo.1980). In addition, after the District Court decided this case, but before the oral argument in this Court, the Seventh Circuit decided In re Thornhill Way I, 636 F.2d 1151 (7th Cir. 1980), holding that Section 517 continues to permit foreclosure after assignment of an insured mortgage to HUD. In the main, we agree with the reasons advanced by the Seventh Circuit. Its holding is the only appellate authority in point. Accord, United States v. Mansion House Center North Redevelopment Co., 594 F.2d 653, 656 n.5 (8th Cir.) (dictum), cert. denied, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 45 (1979). We also agree with the District Court that the United States has not been estopped by its conduct to raise the bar of Section 517 in this case.
 
 II.
 
 4
 What has been said is sufficient to dispose of the appeal, and ordinarily we would not encumber the books with more writing on the subject. In this case, however, we deem it appropriate to discuss in brief compass some of the objections the appellant-debtors have argued so well, even elegantly, in their briefs before us.
 
 
 5
 1. Appellants point out that the Seventh Circuit in Thornhill Way I, supra, 636 F.2d at 1155, relies on United States v. Bristol Hills Apartments, 461 F.Supp. 1179 (E.D.Mich.1978), and in particular quotes the following paragraph from Bristol Hills :Not only is this the most reasonable way to read the section concerned, but it is also a good rule. If the law were otherwise, a private mortgagee would have the power, by either assigning or refusing to assign its rights under the mortgage to the government, to determine whether the benefits of Chapter 12 will be available to the mortgagor. What would undoubtedly happen if this were the law is that the government would make sure not to accept assignments until foreclosure proceedings had already been effectuated. This would force some investors to hesitate to finance needed projects for fear of being a party to foreclosure proceedings because the government would not let them out by accepting an assignment.
 
 
 6
 461 F.Supp. at 1181. Appellants correctly point out that part of this statement is mistaken. It is not true that "the government would make sure not to accept assignments until foreclosure proceedings had already been effectuated," because under Section 207(g) of the National Housing Act, as added by the Act of Feb. 3, 1938, § 3, 52 Stat. 8, 18-19, 12 U.S.C. § 1713(g), the mortgagee has the option whether to institute a foreclosure suit on its own, or assign the mortgage to the United States and receive the benefits of the insurance. Thus, if the mortgagee decides to assign the mortgage to HUD, the agency cannot reject the assignment. To the extent that Thornhill Way I and Bristol Hills are based on the premise that construing Section 517 not to be a bar to Chapter XII proceedings would induce HUD not to accept assignments, and thus make investment in insured mortgages less attractive to private lenders, the reasoning of those cases is pro tanto weakened. We note, however, that the paragraph quoted above is not the only, not even the predominant, reason given by the Thornhill Way I and Bristol Hills courts for their holding. And it remains true that if the bar of Section 517 is removed by assignment of an insured mortgage to the United States, and if (as appellants argue and we have agreed) an insured mortgagee may at its option make such an assignment whether HUD wants it to or not, then the statute would give the private lender power by its own unilateral act to confer on the debtor the otherwise unavailable protection of Chapter XII. Appellants urge in addition, Brief 29 n.*, that "HUD, by offering to pay 100% of the insurance, can require the mortgage to be assigned rather than foreclosed." But why would HUD ever choose to do so, when the consequence of its choice, under appellants' view of the statute, would be to make the mortgage unenforceable as against a Chapter XII petition?
 
 
 7
 2. Appellants also claim that the courts holding against them have misused the maxim of statutory construction, in pari materia. Both the District Court, In re Mansion House Center South Redevelopment Co., supra, 5 B.R. at 828-29, and the Seventh Circuit in Thornhill Way I, supra, 636 F.2d at 1154 n.9, point out that the National Housing Act uses the terms "mortgage insured" and "insured mortgage" to refer to mortgages after they have been assigned to HUD. Section 207(k) of the National Housing Act, added by the Act of Feb. 3, 1938, § 3, 52 Stat. 8, 20, 12 U.S.C. § 1713(k), provides:
 
 
 8
 The Secretary is authorized either to (1) acquire possession of and title to any property, covered by a mortgage insured under this section and assigned to him, by voluntary conveyance in extinguishment of the mortgage indebtedness, or (2) institute proceedings for foreclosure on the property covered by any such insured mortgage and prosecute such proceedings to conclusion.
 
 
 9
 This provision quite clearly uses the term "insured mortgage" to refer to a mortgage held by HUD as assignee, at which point the insurance, in the sense of a continuing contractual obligation owed by HUD as insurer to the private lender as insured, must necessarily have terminated. Clause (2) of § 1713(k), moreover, uses the term "insured mortgage" in the context of a foreclosure proceeding instituted by HUD, which is exactly what we have here.
 
 
 10
 Appellants point out that the provision being construed here, Section 517, is part of the Bankruptcy Act, not the National Housing Act. They say the rule of in pari materia should be used to refer only to other portions of the same statute being interpreted, or at least a related statute with the same purposes, not to a different statute with different purposes. The purposes of the Bankruptcy Act are different from those of the Housing Act, the argument runs, and therefore it is not proper for a court to refer to the latter for aid in interpreting the former. The trouble with this argument is that it exalts a rule of construction into a rule of law. Canons of construction are useful in some contexts, but they are not to be inflexibly applied according to some rigid definition having no regard to the particular situation before the court. See Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed, 3 Vand.L.Rev. 395 (1950). The important point here is that Section 517 refers in terms to the National Housing Act in describing the "mortgage insured" to which Chapter XII shall not apply. Congress necessarily decided that the general policy of the Bankruptcy Act, within the boundaries of Section 517, should yield to that of the National Housing Act. Since a question has arisen as to the meaning of the phrase "mortgage insured pursuant to the National Housing Act," it is only common sense to look at the National Housing Act to see what Congress meant when it said "mortgage insured." Indeed, that is all canons of statutory construction are statements embodying a particular application of common sense. A maxim of interpretation, if taken beyond that limited function, becomes a legal mutant, not a natural growth.
 
 
 11
 3. Appellants stress that what is now Section 517 began life before the Chandler Act of 1938. Section 517 was first enacted as an amendment to Section 77B(n) of the Bankruptcy Act of 1898, codified before 1938 as 11 U.S.C. § 207(n). The Act of August 20, 1935, 49 Stat. 664, amended Section 77B(n) to read in part as follows:
 
 
 12
 (n) Nothing contained in this section ( s77B, relating to corporate reorganization) shall be construed or be deemed to affect or apply to the creditors of any corporation under a mortgage insured pursuant to the National Housing Act and Acts amendatory thereof and supplementary thereto ....
 
 
 13
 When this statute first became law, the Federal Housing Administration, HUD's predecessor agency, was incapable of receiving assignments of mortgages. See National Housing Act, Act of June 27, 1934, 48 Stat. 1246. It could acquire property from an insured lender only after the lender itself had successfully instituted and completed foreclosure. The term "mortgage insured" could not, therefore, have referred to a HUD-held mortgage in 1935, when the predecessor of Section 517 was enacted. The reenactment of Section 517 as part of the Bankruptcy Act of 1938 was only a codification, appellants say, and codifications are not ordinarily held to work substantive changes. It follows that the term "mortgage insured" can no more refer to HUD-held mortgages today than it did in 1935.
 
 
 14
 The answer, we think, is that the original version of Section 517, like the current version, does not refer to "the National Housing Act" simpliciter, but to "the National Housing Act and Acts amendatory thereof and supplementary thereto." The Act of Feb. 3, 1938, 52 Stat. 8, referred to several times already in this opinion, was entitled the "National Housing Act Amendments of 1938." It was an act "amendatory (of) and supplementary" to the National Housing Act. The term "mortgage insured" in the 1935 amendment to the Bankruptcy Act is properly construed not only in the light of the then-existing National Housing Act of 1934, but also in the light of the later-enacted National Housing Act Amendments of 1938. And this would be so even if the 1935 bankruptcy provision had not been reenacted in 1938 after the amendment of the National Housing Act. When the 1938 Housing Act Amendments were enacted, moreover, Congress made an explicit cross-reference to what was then Section 77B(n) of the Bankruptcy Act. Section 11 of the National Housing Act Amendments of 1938, 52 Stat. 26, 12 U.S.C. § 1733, added a new Section 514 to the National Housing Act, providing, in part, as follows:
 
 
 15
 The provisions of ... subsection (n) of Section 77B of the Bankruptcy Act, as amended (49 Stat. 664) ... and all other provisions of law establishing rights under mortgages insured in accordance with the provisions of the National Housing Act, shall be held to apply to such Act, as amended.
 
 
 16
 We hold, therefore, that the rights conferred by then Section 77B(n) on private lenders holding insured mortgages under the original National Housing Act of 1934, were extended to HUD as a mortgage-holder under the National Housing Act Amendments of 1938.
 
 
 17
 4. Appellants object that such a reading of Section 517 in effect changes the phrase "mortgage insured" to "mortgage uninsured." As we have noted, the insurance is no longer outstanding after the mortgage is assigned to HUD. But it does not follow that the United States is therefore not a "creditor of a debtor under a mortgage insured pursuant to the National Housing Act." The word "insured" does not have to mean "insured at the time the Chapter XII proceeding is brought." As a matter of the English language, it can just as well mean "which had been insured before assignment to the United States." English is not highly inflected. It does not have distinct one-word forms for present passive participles ("then being insured") and past passive participles ("having been insured"). The word "insured" is broad enough to bear either meaning. For the reasons we have given, we think the preferable reading is to include mortgages first insured by and later assigned to HUD.
 
 
 18
 The judgment is affirmed.
 
 
 
 [1]
 The Bankruptcy Act of 1938, also known as the Chandler Act, Act of June 22, 1938, 52 Stat. 840, codified until 1978 as 11 U.S.C. §§ 1 et seq., was repealed by § 401(a) of the Bankruptcy Reform Act of 1978, Act of Nov. 6, 1978, 92 Stat. 2549, 2682. The effective date of the new Bankruptcy Code was October 1, 1979, see § 402(a) of the Bankruptcy Reform Act, 92 Stat. 2682, 11 U.S.C. prec. § 101 note, but under § 403(a) of the Bankruptcy Reform Act, 92 Stat. 2683, 11 U.S.C. prec. § 101 note, cases commenced under the Bankruptcy Act of 1938 shall continue to be conducted and determined under that Act. This proceeding was commenced on July 11, 1979, before the effective date of the new Act
 
 
 [2]
 The reference is to Chapter XII of the Bankruptcy Act of 1938, formerly 11 U.S.C. §§ 801-926. The Chapter is entitled "Real Property Arrangements by Persons Other Than Corporations." The appellant debtors, who commenced this proceeding for a real-property arrangement, are limited partnerships
 
 
 [3]
 The Hon. John F. Nangle, United States District Judge for the Eastern District of Missouri