**ENTERPRISE TOOLS, INC. & E.B. Bennett, Plaintiffs,**

**Little Rock Mack Sales and Service, Inc., Intervenor,**

v.

**EXPORT–IMPORT BANK OF THE U.S., Defendant.**

**No. LR–C–82–89.**

United States District Court, E.D. Arkansas, W.D.

June 3, 1983.

William L. Buffalo, Little Rock, Ark., for plaintiffs.

Carey E. Basham, Little Rock, Ark., for intervenor.

J. Christopher Kohn, Carmen M. Shepard, Attys., Civ. Div., Dept. of Justice, Washington, D.C., George W. Proctor, U.S. Atty., E.D. Ark., Little Rock, Ark., for defendant.

ORDER

EISELE, Chief Judge.

Pending before the Court is the motion to dismiss this case filed by the defendant

Export-Import Bank of the United States ("Eximbank"). For the reasons stated below, the motion will be denied.

In their complaint, the plaintiffs allege the following set of facts. In 1981 they procured a policy of insurance from Eximbank through its licensed agent in the State of Arkansas. The purpose of the policy was to provide insurance coverage for the plaintiffs' petroleum hauling operations in Mexico. Over a period of time the plaintiff transported ten tractor-trailer rigs into Mexico for the purpose of hauling liquified petroleum within that country for a company called Petroleos Mexicanos. Sometime after operations had been underway, the plaintiffs were informed that they had to cease the hauling because their trucks were not of Mexican manufacture. They were told that they could resume operations upon obtaining Mexican-made equipment. The plaintiffs did not purchase any Mexican-made trucks. Consequently their trucks were seized and they have been unable to recover them. The plaintiffs seek to recover $5,000,000 on the insurance policy issued by Eximbank.

Eximbank relies on three grounds upon which it contends that this case should be dismissed. The first is that service of process was improper in this case because service was made only on an agent for Eximbank, and not on the United States Attorney for the Eastern District of Arkansas as required by Fed.R.Civ.P. 4(d)(5). The issue is now moot, however, in that the plaintiffs served the United States Attorney on April 21, 1982.

The second ground for dismissal proffered by Eximbank is that the plaintiffs have not exhausted their administrative remedies in that they have not filed a Proof of Loss which would allow Eximbank to act administratively on their claim. Apparently, there has been much controversy regarding this Proof of Loss, but it is now clear that the plaintiffs have filed it and that Eximbank has, by letter to the plaintiffs, declined to assume any liability for the plaintiffs' claim. Therefore, this ground for dismissal is now moot.

The final ground upon which Eximbank relies for its motion for dismissal raises an issue of jurisdiction. Eximbank contends that exclusive jurisdiction over this case is vested in the United States Court of Claims for the reason that this is a contract claim against the United States for money damages in excess of $10,000. The plaintiffs rebut this contention by arguing that the United States is not a party to this lawsuit and that if a judgment is recovered, no funds from the public treasury would need be expended to satisfy it. The Court agrees with the plaintiffs and finds that it has jurisdiction over this cause of action.

Title 28 of the United States Code, § 1346(a)(2), by negative implication, vests the Court of Claims with exclusive jurisdiction over those cases in which the United States is a defendant and which involve contract claims, not sounding in tort, which allege damages in excess of $10,000. *See International Engineering Co., Div. of A–T–O, Inc. v. Richardson*, 512 F.2d 573 (D.C. Cir.1975), *cert. denied* 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636. Because the damages claimed in the instant case are $5,000,000, the only issue for this Court to resolve is whether this suit is one brought against the United States.

In *Lance International, Inc. v. Aetna Casualty & Surety Co.*, 264 F.Supp. 349 (S.D.N.Y.1967), the court was confronted with a removal issue involving multiple defendants, one of which was the Export-Import Bank of Washington (the precursor to the Export-Import Bank of the United States). The district court ultimately remanded the case, but in reaching its decision it found that the case would have been removable if Eximbank had been the sole defendant. This finding was premised on the court's holding that it had jurisdiction over Eximbank and the $124,326.48 claim brought against it. The Court stated:

If this action were limited to the Export-Import Bank, there could be no question about the latter's right to remove the suit against it to this Court pursuant to 28 U.S.C. § 1441(b), since it would be an action over which this Court would have

original jurisdiction founded on a claim or right arising under the laws of the United States. 28 U.S.C. § 1331(a). The statute creating the Export-Import Bank expressly provides: "There is created a corporation with the name Export-Import Bank of Washington, which shall be an agency of the United States of America." (12 U.S.C. § 635) It was long ago established by the Supreme Court that district courts have original jurisdiction over suits against federal corporations, such actions being deemed to arise under the laws of the United States.

*Lance International,* 264 F.Supp. at 352 (citations omitted).

The court then went on to hold that a suit against the Eximbank is also one not within the exclusive jurisdiction of the Court of Claims.

The suggestion that a suit against the Export-Import Bank is exclusively within the jurisdiction of the Court of Claims (see *Harlem River Produce Co., Inc. v. Aetna Cas. & Sur. Co.,* 257 F.Supp. 160 (S.D.N.Y.1965)) appears to be fully answered by the previously quoted express statutory authorization to it "to sue and to be sued * * * in any court of competent jurisdiction." Furthermore, the Supreme Court has tacitly approved suits against similar corporations in forums other than the Court of Claims. *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); see *Federal Housing Administration, etc. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1939); *Garden Homes, Inc. v. Mason,* 249 F.2d 71 (1st Cir.1957), cert. denied, 356 U.S. 903, 78 S.Ct. 562, 2 L.Ed.2d 580 (1958).

The current statute which creates the Export-Import Bank of the United States has language identical to its predecessor statute quoted in the *Lance International* case. Title 12 of the United States Code, § 635(a)(1) states: "There is created a corporation with the name Export-Import Bank of the United States, which shall be an agency of the United States of America ... [T]he bank is authorized and empow-

ered ... to sue and to be sued, to complain and to defend in any court of competent jurisdiction." It would seem therefore that the *Lance International* case would be dispositive of the issue.

Nevertheless, Eximbank cites the Court to the case of *Lomas & Nettleton Co. v. Pierce,* 636 F.2d 971 (5th Cir.1981), in which it was held that a $2,500,000 breach of contract claim brought against the Government National Mortgage Association (GNMA) and the Secretary of Housing and Urban Development (HUD) was within the exclusive jurisdiction of the Court of Claims pursuant to 28 U.S.C. § 1346. Rather than supporting Eximbank's position, however, the *Lomas* case conclusively resolves the issue before this Court and supplies a rationale, absent in the *Lance International* case, for district court jurisdiction.

In *Lomas* the court reiterated its previous ruling in *Industrial Indemnity, Inc. v. Landrieu,* 615 F.2d 644 (5th Cir.1980), that the "sue and be sued" language in the HUD statute, 12 U.S.C. § 1702, was "neither a grant of jurisdiction or a waiver of the immunity of the United States generally" such that the suit could be maintained in the district court as opposed to the Court of Claims. *Lomas,* 639 F.2d at 973. This holding would seem to negate the rule in *Lance International* since that case relied on identical language in the Eximbank statute in determining that the Court of Claims did not have exclusive jurisdiction in cases brought against Eximbank.

The *Lomas* court went on, however, and set out the standard by which it is to be determined when a suit against an agency of the United States is in reality a suit against the United States for the purposes of 28 U.S.C. § 1346. The court referred to its previous *Industrial Indemnity* decision wherein it was stated:

For Industrial Indemnity's claim to be against the Secretary, and therefore within the scope of the "sue and be sued" clause, as opposed to a suit against the United States that could not be brought in federal district court, *any judgment for the plaintiff must be recoverable*

*from funds in the possession and control of the Secretary that are severed from Treasury funds and Treasury control.* Industrial Indemnity, 615 F.2d at 646 (footnote omitted) (citations omitted) (emphasis added).

The standard is clear. Where the judgment sought is to be satisfied from funds in the possession and control of the government agency, and not from funds in the possession or control of the United States Treasury, then the suit is one maintainable against the agency in district court and is not a suit that is within the exclusive jurisdiction of the Court of Claims. In *Lomas* the court found jurisdiction to be vested in the Court of Claims because the statute relevant to GNMA operations expressly stated that all funds collected and expended by that agency "inure[d] solely to the Secretary of the Treasury." 12 U.S.C. § 1722. In *Industrial Indemnity,* however, jurisdiction was found to be properly vested in the district court because the judgment against the Secretary of HUD could be paid out of a certain insurance fund "that is a separate fund in the control and possession of the Secretary." *Industrial Indemnity,* 615 F.2d at 646 (footnote omitted). *See also Southern Sog, Inc. v. Roland,* 644 F.2d 376, 379 (5th Cir.1981) ("[A] federal district court has jurisdiction of a claim by a private litigant to a fund retained by the Secretary of HUD, the origin of which is not the public treasury.").

The case before this Court involving Eximbank is analogous to the suits maintained against HUD in *Industrial Indemnity* and *Southern Sog* and the cases referred to in *Lomas.* The statutory scheme which creates the Eximbank does just that; it creates a fully functional bank vested with the power to "do a general banking business." 12 U.S.C. § 635(a)(1). That includes the power to "receive deposits; to purchase, ... to ... insure ... against political and credit risks of loss," and so forth. *Id.* Although Eximbank was originally capitalized by the United States, this was done by way of a stock subscription whereby capital was given by the United States to Eximbank in return for shares of Eximbank stock of which certificates evidencing ownership by the United States are issued to the President of the United States or his designee. 12 U.S.C. § 635b.

The statute also provides in § 635(a)(1) that:

The bank is authorized to use all of its assets and all moneys which have been or may hereafter be allocated to or borrowed by it in the exercise of its functions. Net earnings of the bank after reasonable provision for possible losses shall be used for payment of dividends on capital stock. Any such dividends shall be deposited into the Treasury as miscellaneous receipts.

Finally, § 365k of the statute provides the language most pertinent to this case:

In the event of any losses, as determined by the Board of Directors of the Bank, incurred on loans, guarantees, and insurance extended under sections 635j–635n of this title, the first $100,000,000 of such losses shall be borne by the Bank; the second $100,000,000 of such losses shall be borne by the Secretary of the Treasury; and any losses in excess thereof shall be borne by the Bank.

In conclusion, the foregoing analysis makes it clear that Eximbank is indeed a bank that functions independently of the general control of the United States Treasury. Eximbank is in control and possession of its own assets and liabilities. It, as a separate entity and from its own assets, is liable for a loss occurring on any insurance it has extended up to $100,000,000. In the instant case, judgment is sought for $5,000,000, a sum which is well below that amount.

Therefore, the Court concludes that it has jurisdiction over this suit pursuant to 28 U.S.C. § 1331 and that this suit is not one within the exclusive jurisdiction of the Court of Claims for the reason that if judgment is entered against Eximbank, it would not require satisfaction from the public treasury.

It is therefore Ordered that the defendant's motion to dismiss be, and it is hereby, denied.